**LIVE OAK BASIN OIL ASS'N et al. v. REAGAN et al. (No. 7647.)**

(Court of Civil Appeals of Texas. San Antonio. Dec. 15, 1926. Rehearing Denied Jan. 19, 1927.)

1. **Mines and minerals ⬅78(7)—Evidence in action for cancellation held to sustain finding that gas and oil lease was forfeited for failure to carry out drilling operations.**

In action by lessors to cancel gas and oil lease, finding that lease was forfeited for failure of lessees to carry out drilling operations *held* supported by evidence, which showed that, after drilling test well, defendants had failed to drill another well to depth of 2,500 feet within 90-day period as required by lease.

2. **Mines and minerals ⬅78(I)—Drilling wells prior to test well held insufficient compliance with gas and oil lease, which required subsequent drilling.**

Where oil, gas, and mining lease required that, after completion of "test well," drilling on additional well should be begun within 90 days and well drilled to depth of 2,500 feet, drilling of wells prior to test well could not be considered compliance with contract.

3. **Mines and minerals ⬅78(I)—Supplemental agreement providing lease should continue so long as oil or gas was produced in merchantable quantities did not waive requirements for drilling additional wells.**

Where oil lease provided for drilling subsequent wells within 90 days after completion of "test well," supplemental agreement, after completion of test well, which recited lease was in effect as long as gas was produced in paying quantities as provided by lease, did not waive requirements of original contract as to drilling other wells.

4. **Mines and minerals ⬅78(7)—Finding that gas and oil lease had been abandoned held sustained by evidence, in action to cancel lease.**

In action to cancel oil, gas, and mining lease, finding that lessees had abandoned lease *held* sustained by evidence, which showed lessees had removed most of machinery from property and practically ceased production.

5. **Mines and minerals ⬅78(I)—In action for cancellation of gas and oil lease, finding lease had expired by lapse of time held sustained by evidence.**

Where lease by its own terms fixed 5-year period for existence, or so long as oil or gas should be produced in paying quantities, finding that lease expired by lapse of time about 4½ months after expiration of 5-year period, *held* sustained by evidence, where all production from lease ceased at end of 4½ months' period.

Appeal from District Court, Live Oak County; T. M. Cox, Judge.

Suit by L. F. Reagan and others against the Live Oak Basin Oil Association and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Neil E. Beaton, of San Antonio, for appellants.

H. S. Bonham and Beasley & Beasley, all of Beeville, for appellees.

COBBS, J. Appellees, as plaintiffs, sued appellants, as defendants, to cancel a certain oil, gas, and mining lease covering some 1,733 acres of land in Live Oak county. The court sustained certain exceptions to plaintiffs' petition and plaintiffs having filed an amended pleading the case went to trial on it. It was alleged appellants failed to carry out the drilling obligation and prayed for the cancellation thereof, for damages, and general relief. The appellants filed general and special exceptions, answered by general denial and plea of estoppel. The cause was tried without a jury and the court made and filed findings of fact and conclusions of law, upon which a judgment was entered in favor of appellees, canceling the lease. Appellants filed some 18 assignments and 10 propositions thereunder, and then grouped their propositions for treatment as follows:

"The trial court made three conclusions of law to the effect (1) that the lease was forfeited for failure of lessees to carry out the drilling obligations; (2) that lessees abandoned the lease; (3) that, if the foregoing conclusions be unfounded, nevertheless, the lease expired by lapse of time in July, 1925.

"Appellants have adopted that natural division and have grouped together for treatment propositions 1, 2, 3, and 4, as they all go to the correctness of the trial court's findings of fact and conclusion of law on the question of whether or not lessees carried out their drilling obligations.

"Into a second group, appellants have placed together propositions 5, 6, and 7, as they all go to the correctness of the trial court's findings and conclusions, on the question of abandonment.

"A third group treats together propositions 8, 9, and 10, as they all go to the correctness of the trial court's findings of fact and conclusions of law upon the question of whether or not the lease expired by lapse of time in July, 1925."

The findings of fact and conclusions of law filed by the court are supported by the testimony.

[1] The prime contention of appellees is grounded upon the alleged failure to drill the required wells to the requisite depth, which constituted the material part of the lease. Appellants seem greatly to rely upon the supplemental agreement that they were entitled to continued to hold the lease as long as there was any gas to be found in the one well that was for a time connected with the town of Three Rivers, and, by reason of such agreement, appellees were estopped from claiming any right of cancellation. The language of which agreement is as follows:

"Whereas, it is agreed that * * * said test well has been drilled in compliance with said

oil and gas lease * * * to a depth of 2,500 feet, and that said second party is now producing gas from said lease, and that the same (lease) is in full force and effect as long as said gas is produced in paying quantities as provided in said lease."

Appellants contend this clause amounted to a novation and appellees contend that subsequent provisions control or limit that, which require the gas to be produced in paying quantities which would insure proper future development, and if not, notwithstanding such supplemental agreement, the lease would terminate by its own terms, and that the purpose of such agreement was to simply acknowledge the completion of a test well and release the sureties from their bond and not for the purpose of renewing and continuing in force the lease.

Considering appellants' propositions 1, 2, 3, 4, as to whether the drilling obligations were fulfilled by the lessees and challenging the ruling of the court in entering judgment of forfeiture, sends us to a consideration of the facts. This case, like almost all the cases of oil lease cancellations, involves largely the consideration of facts.

In this case lessees agreed to begin development at the place to be indicated by appellees within 4 months and continue the drilling with diligence until the same was completed to a depth of 2,500 feet, unless oil, gas, or other minerals be found in paying quantities at a lesser depth.

If oil or gas be found at a depth less than 2,000 feet the lessee had the right to develop and operate the well and was not required to drill to a greater depth; but, within 4 months from the time drilling was stopped, lessee was to begin the drilling of another well on some portion of the land and prosecute drilling with reasonable diligence to a depth of 2,000 or 2,500 feet, unless oil or gas or other mineral be found in paying quantities at a depth between 2,000 and 2,500, and shall be deemed to have complied with his contract if an oil well produced as much as 50 barrels per day at any depth.

The well drilled 2,000 feet unless a 50 barrel well is found is termed the "test well." Dropping of tools in the well or casing, that cannot be controlled or avoided by the lessee, which delays the work and thereby causes failure of the completion within 18 months, then that amount of time shall be extended and an additional period of time, equal to the delay caused, shall be granted. If any of the events cause the abandonment, the lessee shall immediately begin another well and complete the same within 18 months, under foregoing terms.

In case lessee ceases drilling operations for 90 days or quits work and abandons operations for such length of time, he shall be deemed not to have exercised reasonable diligence and the lease shall become null and void.

After "test well" is completed lessee shall, within 90 days, begin drilling operations upon another well on the tract and with reasonable diligence drill to a depth of 2,500 feet, unless oil or gas be discovered or other minerals found in paying quantities at a lesser depth, and, upon failure to do so, the lease may be forfeited, unless lessee pays $2 per acre by depositing same to lessor's credit in the Commercial National Bank of Beeville, which will extend the lease 12 months after payment.

The lessee has privilege to drill the additional well within the 90 days upon the tract in lieu of rentals pending the same, but upon completion shall, within 6 months thereafter, begin drilling upon the particular tract and prosecute drilling with reasonable diligence to a depth of 2,500 feet, unless oil, etc., be found, or this contract shall become null and void, unless on or before 6 months he places to the credit of lessor in said bank the sum of $2 per acre, which operates as rental to cover the privilege of deferring commencement for 12 months from the last-mentioned date. Like payment or tender the commencement will be deferred for like periods for same number of months successively, but in no event to exceed a period of 5 years, unless, etc.

After the "test well" was bored there is no evidence that there was any other well begun and drilled 2,500, as is contemplated and provided for in the thirteenth subdivision of the contract. The trial court found this to be of vital importance which justified the appellees to cancel the contract.

[2, 3] We cannot agree with appellants that wells drilled prior to the test well can in any wise be considered as a compliance with the contract requiring drilling of certain wells after the completion of the "test well." The parties, by their supplemental agreement, designated Reagan No. 3 as the "test well," and did not thereby abrogate any other portion of the contract in respect to the drilling of other wells, for the drilling of other wells thereafter still remained in full force and effect.

The "test well" was completed August 7, 1922, and the contract entitled and required the appellants to drill at least one other well to be drilled on the lease to be begun within 90 days after that date and drilled to a depth of at least 2,500 feet. The drilling of other wells prior thereto cannot be considered to comply with this agreement. There is no waiver by the appellees in the supplemental agreement referred to of the provisions of subdivisions 13 of the original contract. It is clear that the contract contemplated a thorough test of the lease for gas or oil, for even after the completion of the test well the contract required that appellant should drill

at least one other well on the land to be begun within 90 days after date and drilled to a depth of at least 2,500 feet.

[4] Appellants removed all machinery except that at the one producing well, Reagan No. 2, and its production had practically ceased about July 31, 1925, and the connection severed with appellants' consent and appellants did not make any effort to recondition the well and cause production to be continued therein. This was found by the trial court, who gave effect thereto, holding that the lessee had abandoned the lease, which findings and conclusions are justified by the evidence and will not be disturbed.

[5] Considering appellants' propositions 8, 9, and 10 in the order presented, it will be borne in mind that this lease of its own terms fixed a period of 5 years for its existence and as long as oil, gas, or other minerals in paying quantities are produced from the particular tract of land. The period of 5 years expired on the 12th day of March, 1925, so that, according to its own terms, the lease terminated and ceased to be of any further force and effect on the 31st day of July, 1925, when all production from said lease ceased.

It was shown by the testimony that no operations had been carried on since the 8th of February, 1924, and no gas produced at the time of the trial. One well that had some production ceased about July, 1925. The meter was gone, the line disconnected, and several joints taken away. The line had been connected up to Three Rivers, where gas out of the well had been used for a while, then the gas played out and the line was disconnected. And thereafter there was no production from that nor any other well on the lease, and since which time there has been no production from that or any other well on the lease. One of the defendants, Walton, said he did not object to the discontinuing of the well, and did not go out and clean the well when told about it, because he thought the Three Rivers people and companies had available gas at the time and did not care about it.

It was shown for a long time before the well was disconnected from the town of Three Rivers the condition of the well had been very unsatisfactory. Sometimes the pressure would go down to zero and would supply no gas, and at other times the pressure would rise, and finally, it grew so bad that the connection had to be severed. Appellants did not try to and made no attempt to correct the matter after full notice, because it would require too much expense.

All the facts necessary to support the findings and conclusions of the court are apparent in this record. The mere fact that some portion of the oil rig is or was standing on the premises unused for the purpose

for which it was placed there can have no significance in disposing of this case.

We can see no reason to reverse and remand this fact case for another trial. No reversible error of the court is set out, and no error of law apparent of record has been committed, and the judgment of the trial court is affirmed.