## GEO. J. WATSON ET AL V. HENRY ROCHMILL ET AL.

No. 7690. Decided November 5, 1941.
(155 S. W., 2d Series, 783.

566

_Lyndsay D. Hawkins_, of Breckenridge, _Ritchie & Ritchie_ and _J. R. Creighton_, all of Mineral Wells, for plaintiffs in error.

It appearing that there was a complete cessation of production of oil from the leased premises for a period of over three years due solely to oil market conditions generally and lack of a market for the particular oil from the lease in controversy, the mineral owners were entitled to have the jury pass on the question of whether the cessation was merely temporary, as affecting the question of termination of the lease. Waggoner v. Siegler Oil Co., 118 Texas 509, 19 S. W. (2d) 27; Gulf Production Co. v. Continental Oil Co., 132 S. W. (2d) 553; 31 Tex. Jur. 845; Baker v. McFarland, 77 Texas 294, 13 S. W. 1042.

_Slay & Simon_, of Fort Worth and _Gross & Gross_, of Mineral Wells, for defendants in error.

On the question of the Court of Civil Appeals committing error in sustaining the judgment of the trial court and in refusing to sustain defendants assignments of error objecting to such rulings. Western Cottage P. & O. Co. v. Anderson, 97 Texas 432, 79 S. W. 516; Sharp & Dohme v. Waybourne, 74 S. W. (2d) 413; Lutcher v. Allen, 95 S. W. 572.

On the question of what constitutes due service. Gann v. Putman, 141 S. W. (2d) 758; Bender v. Damon, 9 S. W. 747; Commander v. Bryan, 123 S. W. (2d) 1009.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This suit involves the question of the lapsation of an oil and gas mining lease after the expiration of the primary term because of the failure to produce oil from the leased premises. The lease provided in part as follows: "It is agreed that this lease shall remain in force for a term of three (3) years from May 25, 1925, and as long thereafter as oil or gas, or either of them is produced from said land by the leases." A well was brought in on said land in 1925, which produced oil until May 21, 1932. The oil was of low gravity. The well produced about one barrel of oil to ten barrels of salt water. On this last date the tubing became stopped up and was not cleaned out. Oil could have been produced from the well, but due to the depression and the low gravity of the oil there was no market that would justify the operation of the well. As a result no oil was produced from the well from May 21, 1932, until January, 1935. However, during this interval the lessee kept a watchman on the premises and paid the taxes on the leasehold interest claimed by him. In December, 1933, he cleaned out and acidized and swabbed the well. The well was again acidized in July, 1934. At some time during this interval lessee erected a new derrick over the well and installed a pump. There was testimony to the effect that lessee expended over $8,000.00 in the above work and repairs. In January, 1935, a market was found for oil such as could be produced from this well, and production was resumed. This was continued until lessors filed this suit in April, 1937, for a judgment declaring the lease terminated and for removal of cloud from the title thereto. The trial court instructed a verdict in favor of defendant, and this judgment was affirmed by the Court of Civil Appeals. See 134 S. W. (2d) 710.

1, 2 It appears to be very well settled that under the terms of the lease, upon cessation of production after termination of the primary terms, the lease automatically terminated. W. T. Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 19 S. W. (2d) 27. The strictness of the above rule has been modified where there is only a temporary cessation of production due to sudden stoppage of the well or some mechanical breakdown of the equipment used in connection therewith, or the like. Under such circumstances there are authorities which hold that the lessee is entitled to a reasonable time in which to

remedy the defect and resume production. Scarborough v. New Domain Oil & Gas Co., 276 S. W. 331; Texas Pacific Coal & Oil Co. v. Bratton, 239 S. W. 688. In the case at bar, however, the cessation of production was not merely a temporary one. There was no production for a period of two years and seven months. The cessation of production for this long period of time was not brought about nor induced by any mechanical breakdown or other condition in connection with the well or the equipment used in connection therewith. The demoralized condition of the oil market and the low gravity of the oil in no wise prevented the operation of the well by the lesess for whatever oil it would produce. These conditions may have rendered it unprofitable to operate the well, but were not contracted against and consequently they did not prevent a lapsation of the lease when production ceased. Stanolind Oil & Gas Co. v. Barnhill, 107 S. W. (2d) 746; Duff v. Du Bose, 27 S. W. (2d) 122; Live Oak Basin Oil Assn. v. Reagan, 289 S. W. 1052. Under the facts of this case we hold that there was such cessation of production as to terminate the lease as a matter of law.

**3** As heretofore stated, lessee performed some work on the leased premises in 1933 and 1934, and production was resumed in January, 1935, and continued until this suit was filed in 1937. There is a dispute in the facts as to whether lessors had any knowledge of the work so carried on by lessee. Lessors did not own and were not in actual possession of the surface rights in the land, and for this reason they claim that they did not know that lessee had resumed operation of the well. Lessee left lessors' 1/8th royalty of the oil produced from the well from 1935 to 1937 with the refinery where the oil was sold, but for some reason same was not delivered nor tendered to lessors until shortly before this suit was filed. Lessors refused the tender of the royalties at that time. For the sake of this discussion we may assume that lessors did know of the work being performed by lessee on the leased premises. Lessee asserts that lessors by standing by and permitting lessee to produce oil from the premises from 1935 to 1937, and to otherwise develop and improve the lease at lessee's expense, thereby recognized the continued existence of the lease and are therefore estopped to plead the termination thereof. It appears, however, that the lease in question terminated by its own terms automatically upon cessation of production after the expiration of the primary term. The lease

involved the conveyance of an interest in land, and any extension thereof would necessarily have to be in writing unless the doctrine of estoppel applies. 20 Tex. Jur. 272. The conduct of lessors, relied on by lessee as forming a basis for estoppel, all occurred after the lease had fully terminated. At that time lessee knew, or in law must have known, that his lease had terminated. In our opinion, lessors' mere silence after the expiration of the lease was not sufficient to recreate the lease. Guerra v. Chancellor, 103 S. W. (2d) 775 (writ refused) ; 7 Tex. Law Rev. 8; 8 Tex. Law Rev. 530. Consequently, even though lessors did silently permit the improvement and development of the property after the termination of the lease, they are not now estopped to plead the termination thereof.

This Court held in the case of Mitchell v. Simms, 63 S. W. (2d) 371, that the acceptance of the late payment of rentals estopped the lessors to plead the lapsation of the lease. It will be noted, however, that in that case the Court was dealing with an estoppel that occurred *during the primary term of the lease.* Moreover, there was present the affirmative conduct of the lessors in accepting payment of the rentals as though the lease was still in force. In the case at bar the primary term of the lease had expired, and it is not believed that the mere silence of lessors in permitting lessee to develop the lease after the expiration of such primary term was sufficient to estop lessors to assert lapsation of the lease. Summers Oil & Gas, Vol. 2, p. 162, sec. 302.

4 Lessors' action for removal of cloud from title to their mineral interest in the land was a continuous one, and consequently same was not barred by limitation. Texas Company v. Davis, 113 Texas 321, 254 S. W. 304, 309; Luker v. Anderson, 10 S. W. (2d) 149.

It was not necessary that lessors be in possession of the leased premises in order to maintain the action to remove cloud from title. Day Land & Cattle Co. v. State, 68 Texas 526, 4 S. W. 865.

In addition to the suit to remove cloud from title, lessors seek judgment for the value of the oil extracted from the leased premises after the termination of the lease. Lessee asserts an offset for taxes paid and improvements made in good faith. They also assert the right to remove their equipment from the leased premises. As neither of these issues

were determined by the lower court, and as their determination depends on issues of fact, we need not discuss same at this time. In connection with these issues see the following authorities: 31 Tex. Jur. 532; 12 Tex. Law Rev. 210; Gulf Production Co. v. Angus Spear, 125 Texas 530, 84 S. W. (2d) 452; Gulf Production Co. v. Baton, 108 S. W. (2d) 960.

5    There was a controversy between one Gordon Jones on the one hand and Farmers Mutual Royalty Syndicate, Inc., on the other as to the ownership of one-fourth of the minerals in the land in question, subject to whatever interest the lessee had thereon. Both parties claimed title through Manning Oil Corporation, an Arizona corporation. Jones' alleged prior rights depend upon the validity of a judgment recovered by him against Manning Oil Corporation. Jones' petition in that suit alleged that Manning Oil Corporation was an Arizona corporation doing business in Texas, "whose field agent in Texas is John Pierson and in whose absence J. C. Norman acts as such, both of whom may be served with process in Shackelford County, Texas." The sheriff's return on the citation showed service on J. C. Norman, without stating what position or connection, if any, he had with Manning Oil Corporation. The judgment was by default and recited "that the defendant had been duly and regularly cited to appear and answer." Farmers Mutual Royalty Syndicate, Inc., collaterally attacked the judgment, and here contends that there was such conflict between other portions of the record and the recitals in the judgment as to service of process as to impeach the verity of the latter. In our opinion, no such conflict was shown. The allegation in the petition that Norman was acting as field agent for Manning Oil Corporation did not conclusively establish that he was not also a local agent for the corporation, or that he did not occupy any other position with the company such as to make him a suitable person upon whom service could be had under the statutes of this State. R. C. S. 1925, Art. 2031. The recitals in the judgment of due service therefore stood unimpeached, and the judgment was not subject to collateral attack on the grounds indicated. Treadway v. Eastburn, 57 Texas 209. The trial court properly instructed a verdict in favor of Gordon Jones against Farmers Mutual Royalty Syndicate, Inc., for an undivided one-fourth interest in the minerals in question.

For the reasons hereinbefore stated, the judgment of the trial court in favor of Gordon Jones against Farmers Mutual Royalty Syndicate, Inc., for an undivided one-fourth interest

in the minerals in question is affirmed. In all other respects the judgments of the trial court and of the Court of Civil Appeals are reversed, and judgment is here rendered in favor of the plaintiffs and intervenor Gordon Jones against all defendants for title and possession of the minerals in question, three-fourths to the plaintiffs and one-fourth to intervenor Jones, and for removal of cloud from the title to the minerals in question. In all other respects the cause is remanded to the trial court for a new trial.

Opinion delivered November 5, 1941.