Christianson redo 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-049-CV

     RUSSELL S. CHRISTIANSON,
                                                                                              Appellant
     v.

     PEARL EMERSON,
                                                                                              Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 92-00-01779-CV
                                                                                                    

O P I N I O N
                                                                                                    

      Russell Christianson appeals the granting of a summary judgment in favor of Pearl Emerson
terminating a lease under which Christianson claimed a leasehold interest. He argues that the
court abused its discretion in denying his motion for continuance and that the court erred in
entering the summary judgment. We will affirm the judgment.
PROCEDURAL HISTORY
      Emerson sued to terminate a mineral lease dated October 15, 1963, covering 105 acres in
Navarro County. The lease provided for a ten-year primary term "and as long thereafter" as oil
or gas was produced from the land. Emerson alleged that production had ceased and that the lease
had terminated by its own terms. 
      Emerson filed a motion for summary judgment. Attached to her motion were deposition
excerpts and Railroad Commission "P-1" reports. Emerson relied on these documents to show
the absence of production during specific periods of 1987, 1990, and 1991. Christianson filed a
response


 to the motion relying on the force majeure clause of the lease. Christianson's attorney
attached an affidavit alleging that he had "ordered and instructed [Christianson's representative]
to get the Railroad Commission records in regard to wells that are subject to this lawsuit." He
asked the court to continue the matter to allow time to procure affidavits. See Tex. R. Civ. P.
166a(g). However, the court heard and granted Emerson's motion for summary judgment.
MOTION FOR CONTINUANCE
      In his first point, Christianson complains that the court erred in denying his motion for
continuance. Citing Rule 166a(g), he asked that the court continue the matter to permit him to
obtain necessary affidavits. Id. The motion for continuance is in the transcript before us, but no
order denying the motion is in the transcript nor does the statement of facts reflect a ruling by the
court. The court denied the motion by proceeding with the summary judgment hearing. 
      The granting of a request for a continuance of a summary judgment hearing is within the
discretion of the court. Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986). The court's
exercise of discretion will not be disturbed on appeal unless the record discloses an abuse. Id. 
Here, the record does not contain a written ruling nor does it contain any testimony from a hearing
on the motion. Christianson bears the burden of seeing that a sufficient record is presented to
show error requiring reversal. See Tex. R. App. P. 50(d). We do not have a sufficient record
before us to determine whether the court abused its discretion. Id.; State v. Wood Oil Distrib.,
Inc., 751 S.W.2d 863, 865 (Tex. 1988). We overrule point one.
MOTION FOR SUMMARY JUDGMENT
      In his second point, Christianson complains that the court erred in granting Emerson's motion
for summary judgment. In reviewing the summary judgment, we must determine whether
Emerson met her burden by establishing that no genuine issue of material fact exists. See Nixon
v. Mr. Property Management, 690 S.W.2d 546, 548 (Tex. 1985); City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). She bears the burden of proving her entitlement
to the summary judgment as a matter of law. See Nixon, 690 S.W.2d at 548; Roskey v. Texas
Health Facilities Comm'n, 639 S.W.2d 302, 303 (Tex. 1982) (per curiam); Great Am. Reserve
Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). We must view
the evidence in the light most favorable to Christianson. See Great American, 391 S.W.2d at 47. 
We will accept as true all evidence favorable to Christianson. See Montgomery v. Kennedy, 669
S.W.2d 309, 311 (Tex. 1984); Nixon, 690 S.W.2d at 549. Moreover, we must indulge every
reasonable inference in Christianson's favor and resolve all doubts as to the existence of a genuine
issue of material fact in his favor. See id. We will consider evidence that favors Emerson only
if it is uncontroverted. See Great Am., 391 S.W.2d at 47.
TERMINATION OF LEASE
      The habendum clause provided that the lease would remain in force for ten years and as long
thereafter as oil, gas, or other minerals were produced from the land. "Produced" in this
connection means "production in paying quantities." See Gulf Oil Corp. v. Reid, 161 Tex. 51,
337 S.W.2d 267, 269 (1960); Garcia v. King, 139 Tex. 578, 164 S.W.2d 509 (1942). A marginal
well is producing in paying quantities if, under all relevant circumstances, a reasonably prudent
operator would, for the purpose of making a profit and not merely for speculation, continue to
operate a well in the manner in which the well in question was operated. Clifton v. Koontz, 160
Tex. 82, 325 S.W.2d 684, 691 (1959). If production of oil completely ceases after the expiration
of the primary term, the lease automatically terminates. See Watson v. Rochmill, 137 Tex. 565,
155 S.W.2d 783, 784 (1941).
      Emerson's motion for summary judgment alleged that production "ceased" on the property
from January through May of 1987 and that "no oil was produced" during 1990 and 1991. 
Emerson's summary judgment evidence consists of P-1 production reports filed by Woodstock
with the Railroad Commission in 1987, 1990, and 1991; excerpts from the depositions of E.A.
Riley, president of Woodstock; and excerpts from the deposition of Don Landrum, agent for
Christianson. 
force majeure
      The P-1 reports show no production from the property in January, February, March, April,
or May of 1987. Although there was no production during these months, Riley suggested in his
deposition testimony that the force majeure clause of the lease excused the cessation. Riley
testified that Woodstock was under a Railroad Commission pipeline severance order during this
time period and contended that the force majeure clause of the lease excused Woodstock's non-performance. 
      The force majeure clause in the lease provides:
11. If any operation permitted or required hereunder, or the performance by Lessee of
any covenant, agreement or requirement hereof is delayed or interrupted directly or
indirectly by any past or future acts, orders, regulations or requirements of the
Government of the United States or of any state or other governmental body, or any
agency, officer, representative or authority of any of them, or because of delay or
inability [to] get materials, labor, equipment or supplies, or on account of any other
similar or dissimilar cause beyond the control of Lessee, the period of such delay or
interruption shall not be counted against the Lessee, and the primary term of this lease
shall automatically be extended after the expiration of the primary term set forth in
Section 2 above, so long as the cause or causes of such delays or interruptions continue
and for a period of 30 days thereafter and such extended term shall constitute and shall
be considered for the purposes of this lease as a part of the primary term hereof. The
provisions of Section 5 hereof relating to the payment of delay rentals shall in all things
be applicable to the primary term as extended hereby just as if such extended term were
a part of the original primary term in Section 2 hereof. The Lessee shall not be liable to
Lessor in damages for failure to perform any operation permitted or required hereunder
or to comply with any covenant, agreement or requirement hereof during the time Lessee
is relieved from the obligations to comply with such covenants, agreements or
requirements.
Force majeure clauses protect the parties in the event that a part of the contract cannot be
performed "due to causes which are outside the control of the parties and could not be avoided by
exercise of due care." Black's Law Dictionary 581 (5th ed. 1979). 
      Force majeure is an affirmative defense. A defendant cannot avoid a summary judgment by
merely pleading an affirmative defense. A plaintiff who conclusively establishes the absence of
disputed fact issues will not be prevented from obtaining summary judgment because the defendant
merely pleaded an affirmative defense. Nicholson v. Memorial Hosp. System, 722 S.W.2d 746,
749 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). An affirmative defense will
prevent the granting of a summary judgment only if each element of the affirmative defense is
raised by summary-judgment evidence that would be admissible upon the trial of the case. 
Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984). Emerson's summary-judgment proof
clearly showed that there was no production for five months in 1987. Christianson failed to
provide summary-judgment evidence to raise the elements of his affirmative defense. See id. We
overrule point two.
      We affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed October 20, 1993
Do not publish