**EXXON MOBIL CHEMICAL COMPANY, a Division of Exxonmobil Corporation, Appellant,**

v.

**Robert F. FORD, Jr., Appellee.**

**No. 09–05–338–CV.**

Court of Appeals of Texas, Beaumont.

Submitted Jan. 26, 2006.

Delivered March 9, 2006.

Rehearing Overruled March 30, 2006.

George E. Bean, Chambers, Templeton, Cashiola & Thomas, Beaumont, David M. Gunn, Connie H. Pfeiffer, Erin H. Beck, Beck, Redden & Secrest, LLP, Houston, for appellant.

Anthony G. Brocato, Law Office of Anthony G. Brocato, Beaumont, for appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

Appellant Exxon Mobil Chemical Company ("Exxon")[1] appeals from the denial of its motion for summary judgment against appellee Robert F. Ford, Jr., and the granting of summary judgment in favor of Ford as to Ford's fraud claim. We affirm in part and reverse and render in part.

### Background

On July 31, 1998, Exxon and Ford's predecessor in title, G.L., executed a pipe-

---

1. Exxon is the successor in interest to Mobil Oil Corporation.

line easement[2] which granted Mobil

the right of way, easement and privilege to, from time to time, construct, lay, operate, maintain, repair, or replace a pipeline for the transportation of oil and gas, and the products thereof, water, or any other substance or fluid, together with such valves, fittings, meters, and appurtenances (below ground), as may be necessary or convenient to the operation of said line, . . . within an easement that is the width of the pipeline only; and together with the right of ingress and egress on, over, across and through Grantor's lands located in the Antwine Mort Survey, A–571, Jefferson County, Texas. . . . The lands referenced herein are more particularly described as tract "3" in a Special Warranty Deed from Texasgulf Inc., to Howell Cobb, Trustee, dated June 25, 1979, recorded in Volume 2167, Page 6, under Clerk's file No. 1025957, Deed Records, Jefferson County, Texas.[3]

A map showing the path of the proposed pipeline passing through the Antwine Mort Survey ("the Mort"), the Munson Bowes Survey ("the Bowes"), and the Elias Stone Survey ("the Stone") was attached to the agreement and filed with it in the county property records, but the easement agreement did not incorporate the map by reference or otherwise refer to it. The text of the easement agreement did not mention the Stone.

On October 21, 1998, G.L. and Exxon executed an easement amendment. In the amendment, G.L. granted Exxon "sufficient temporary workspace as needed for its operations during construction, repair, replacement, maintenance, removal and operation of its pipeline across Grantor's property[.]" The first paragraph of the easement amendment recited that the parties had previously

entered into an easement agreement on, over across and through Grantor's property located in the Ellias [sic] Stone Survey, Abstract 199, the Munson Bowes Survey, Abstract 73 and the Antwine Mort Survey, Abstract 571, Jefferson County, Texas. Said easement agreement is recorded as Clerk's File Number 98–9830126, in the Official Public Records, Jefferson County, Texas. . . .

The easement amendment also recited that "All other terms and conditions of the above easement shall remain in force and effect."

On October 23, 1998, Ford purchased the Stone, the Mort, the Bowes, and two other tracts by special warranty deed. The deed recited that the conveyance was subject, among other encumbrances, "to easement recorded under County Clerk's File No. 9830126, Official Public Records of Real Property, Jefferson County, Texas. . . ." Ford and Exxon executed an easement amendment on February 25, 1999.[4] The amendment recited that its purpose was to provide for relocation of the proposed pipeline route shown on a map "attached hereto and made a part hereof[.]" The attached map depicted a proposed pipeline route through the Stone, the Mort, and the Bowes. The amendment further recited that G.L. had previously executed in favor of Exxon "a pipeline easement over, across and through [the Stone] . . ., said easement being recorded under County Clerk's File No. 98–9830126,

2. The parties sometimes refer to this document as "No. 126."

3. The deed from Texasgulf to Cobb identified the Antwine Mort Survey as tract 3.

4. The parties sometimes refer to this amendment as "No. 657."

Public Records of Real Property, Jefferson County, Texas, reference to which is here made for all purposes...." The amendment also provided as follows: "It is agreed and understood that the pipeline relocation referenced herein in no way changes, alters or reduces MOBIL's rights and privileges granted by the easement referred to above, and that the easement referred to above shall remain in full force and effect except as amended hereby[.]" Pursuant to the purported easement and amendments, Exxon constructed and began operating a propylene pipeline along a strip of land in the Stone.

Before the parties executed the 1999 easement amendment, Ron Sullivan of Exxon told Ford that Exxon possessed an easement across the Stone. In his affidavit, Ford averred, "I would not have executed '657' if I had not been made to believe by Mobil that the July 31, 1998, instrument ... referred to as '126' created a pipeline easement in the Stone[.]"

In October of 2002, Ford read the original easement agreement and "became uncertain" that it created an easement across the Stone, so he sent a letter to Sullivan. In said letter, Ford wrote, "[a]ccording to my review of all records available to me it appears that the pipeline easement granted by [the previous owner], Trustee, to Mobil Chemical Company ... is defective. It is likely the document should have described a path through the A. Mort, M. Bowes, and E. Stone Surveys." Ford proposed to execute a "complete, perfected easement document" in exchange for one hundred thirty-five acres of land. In a letter dated March 13, 2003, Sullivan responded that Exxon "is of the opinion that

the pipeline right-of-way crossing your property is adequately described in the existing easement."

On March 25, 2004, Ford sued Exxon seeking cancellation of the easement amendment, removal of the pipeline, removal of the alleged cloud on his title, and quieting of title. Ford also alleged Exxon committed statutory fraud. *See* Tex. Bus. & Com.Code Ann. § 27.01 (Vernon 2002). Both parties filed traditional motions for summary judgment. The trial court granted Ford's motion for summary judgment, and Exxon appealed.

### Exxon's Issues

Exxon states its issues on appeal as follows:

The issues presented are whether the trial court erred in granting Plaintiff's motion for summary judgment and in denying Exxon Mobil's cross-motion. A more specific way of stating the issues would be to frame them in terms of the dispute about the 1999 deed:

1. Is this 2004 lawsuit that seeks to cancel a 1999 deed untimely under the 4–year statute of limitations?
2. Was it fraud on the plaintiff to state—as the 1999 deed says in one of its recitals—that his land had an easement across it? In other words, does the easement exist and was it fraud to say so?[5]

Because Exxon's motion for summary judgment asserted the affirmative defense of limitations, we interpret Exxon's first issue as challenging the denial of its motion for summary judgment. *See* Tex.R. Civ. P. 94. We review the trial court's summary judgment order de novo. *See*

---

5. Although Exxon's broad initial statement of its issues asserts that the trial court erred by granting Ford's motion for summary judgment, Exxon's brief addresses only the issues of limitations and whether Exxon committed

fraud. Therefore, we do not consider the propriety of the summary judgment as to Ford's other causes of action. *See* Tex.R.App. P. 38.1(h); *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970).

*Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). With a traditional motion for summary judgment, the movant bears the burden of establishing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). A defendant moving for summary judgment must negate at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the non-movant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Id.*

Exxon's motion for summary judgment contended Ford's claims for fraud and rescission are barred by limitations. See Tex. Civ. Prac. & Rem.Code Ann. § 16.004(a)(4) (Vernon 2002); Tex. Civ. Prac. & Rem.Code Ann. § 16.051 (Vernon 1997). To prevail, Exxon must have (1) conclusively proved when the cause of action accrued, and (2) negated the discovery rule by proving as a matter of law that there is no genuine issue of material fact about when Ford discovered or in the exercise of reasonable diligence should have discovered his cause of action. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

Ford purchased the Stone on October 23, 1998, but he did not file suit until March 25, 2004. Ford asserts his claims are not barred by the applicable four-year statutes of limitations because he had no knowledge of the alleged fraud prior to October f 2002 and "knowledge of the existence of easement No. 126, constructive or otherwise, and reading the easement, does not as a matter of law show the falsity of [Exxon's] representation[.]" Exxon argues Ford's claims are time-barred because he was charged with constructive knowledge of the contents of all instruments in his chain of title.

Ford's causes of action seeking cancellation of the easement and for fraud clearly fall within the purview of the four-year statutes of limitations. *See Sherman v. Sipper*, 137 Tex. 85, 152 S.W.2d 319, 321 (1941); Tex. Civ. Prac. & Rem.Code Ann. § 16.004(a)(4) (Vernon 2002); Tex. Civ. Prac. & Rem.Code Ann. § 16.051 (Vernon 1997). Fraud prevents the running of a statute of limitations only until the fraud is discovered or could have been discovered through the exercise of reasonable diligence. *Sherman*, 152 S.W.2d at 320–21.

[W]here a person has a right in property, and he claims fraudulent statements were made concerning the title to such property, when the records relating to such title are open to him he must exercise reasonable diligence to discover such defect; and if by the exercise of such diligence he could have discovered such defect and would have known of his right, he is held to have known it, and limitation will run against his claim from the time he could have made such discovery by the exercise of ordinary diligence.

*Id.* at 321.

The easement agreement does not include the Stone, yet the 1998 amendment recited that the easement crossed

the Stone. If Ford had exercised reasonable diligence, he could have discovered the alleged fraud when he took title to the property by reading the original easement agreement, which did not mention the Stone, and the 1998 amendment that asserted an easement across the Stone existed. Indeed, Ford testified that he "became uncertain" about whether an easement existed across the Stone after simply reading the original easement agreement. Therefore, we reject Ford's contention that he could not have discovered the alleged fraud simply by reading the documents in his chain of title. We find that Exxon conclusively established when Ford's cause of action accrued, and there is no genuine issue of material fact as to when Ford should have discovered his cause of action. Accordingly, Ford's causes of action for cancellation of the easement amendment and fraud are time-barred. *See id.; see also* Tex. Civ. Prac. & Rem.Code Ann. § 16.004(a)(4) (Vernon 2002); Tex. Civ. Prac. & Rem.Code Ann. § 16.051 (Vernon 1997). Because Ford based his entitlement to attorney's fees upon his statutory fraud claim, his claim for attorney's fees is likewise time-barred. *See Sherman,* 152 S.W.2d at 320–21; Tex. Civ. Prac. & Rem.Code Ann. § 16.004(a)(4) (Vernon 2002); Tex. Bus. & Com.Code Ann. § 27.01(e) (Vernon 2002).

■ Ford's petition also sought quieting of title and removal of the alleged cloud on his title. In his petition, Ford stated the nature of his claims as follows:

> This suit is an action to annul and cancel an easement on real property, for a mandatory injunction requiring removal of a pipeline located upon real property as set forth below and removing the cloud on title to the pipeline strip and quieting title to said pipeline strip. . . .

Ford's prayer requested that he have judgment against defendant:

(A) Annulling and cancelling No. 657;

(B) Granting a mandatory injunction requiring defendant to remove its pipeline from the pipeline strip;

(C) Removing the cloud on title to the pipeline strip and quieting title to said pipeline strip in Plaintiff;

(D) Awarding reasonable and necessary attorney's fees, expert witness fees, costs for copies of depositions, and costs of court pursuant to Texas Business and Commerce Code Section 27.01; and for costs and for such other relief to which he is entitled.

Exxon characterizes Ford's action as one for statutory fraud, in which clearing title and cancelling the easement amendment are simply among the remedies sought. However, Ford's petition reveals his suit primarily sought the equitable remedies of cancelling the easement amendment, removing the cloud on his title, and requiring Exxon to remove the pipeline. Ford's petition did not merely include a request in the prayer that the alleged cloud on his title be removed. Rather, Ford's petition characterized removal of the alleged cloud on his title as a cause of action. Ford apparently alleged statutory fraud as a means to recover costs and attorney's fees.

■ Exxon's motion for summary judgment did not assert that limitations barred Ford's quiet title claims,[6] and it

---

**6.** We note that although Ford's summary judgment motion also did not address his quiet title claims, the summary judgment nevertheless removed the cloud an quieted title in Ford. Because a movant may not be granted summary judgment on a claim not addressed in its motion, the trial court's summary judgment granting more relief than Ford requested is erroneous. *See Science Spectrum,* 941 S.W.2d at 912. However, because Exxon does not raise this issue on appeal, we cannot reverse the trial court's judgment on that ba-

would have been improper if the trial court had granted summary judgment in favor of Exxon on these claims. *See Science Spectrum*, 941 S.W.2d at 912; *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983) ("It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding."). Furthermore, an action to quiet title to land is generally never time-barred because the injury to the property's title is continuous.[7] *Watson v. Rochmill*, 137 Tex. 565, 155 S.W.2d 783, 785 (1941); *Texas Co. v. Davis*, 113 Tex. 321, 254 S.W. 304, 309 (1923). Accordingly, the trial court properly denied Exxon's motion for summary judgment as to Ford's quiet title claim. Issue one is sustained as to Ford's claims for statutory fraud, cancellation of the easement amendment, and attorney's fees, but overruled as to Ford's quiet title claim.

In its second issue, Exxon argues the trial court should have either granted its motion for summary judgment because there was no fraud as a matter of law or denied Ford's motion for summary judgment because Ford failed "to present conclusive proof of all the elements of fraud." Because we have determined that Ford's fraud claim is barred by limitations, we need not address issue two.[8]

We affirm that portion of the summary judgment quieting title in Ford and removing the cloud on Ford's title, as well as the relief granted pursuant thereto, and we reverse and render judgment in favor of Exxon as to Ford's claims for cancellation of the easement amendment, fraud, and attorney's fees.

AFFIRMED IN PART, REVERSED AND RENDERED IN PART.

DAVID GAULTNEY, Justice, dissenting.

The majority points out that Ford pled an equitable cause of action below that he did not raise as a ground in his summary judgment motion; and the majority believes Exxon procedurally defaulted by not addressing this omission in its appellate briefs. Based on this asserted procedural default, recognized by the Court but not addressed by Ford on appeal, the majority renders judgment for Ford on the equitable claim. I respectfully dissent. I would hold Exxon's challenge to the summary judgment declaring the easement invalid sufficiently raised the subsidiary issue of the redundant, if not dependant, equitable claim. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex.2005) (Points of error should be liberally construed to fairly and equitably adjudicate the litigants' rights.).

I respectfully disagree with the majority's implicit reasoning that an equitable cause of action may exist when a legal

---

sis. *See Texas Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986); *State Bd. of Ins. v. Westland Film Indus.*, 705 S.W.2d 695, 696 (Tex.1986) (An appellate court may not reverse a trial court's judgment in the absence of properly assigned error.).

7. Laches is an affirmative defense asserted in response to an unreasonable delay in pursuing an equitable claim when the defendant has changed position to its detriment. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex.1964); Tex.R. Civ. P. 94. Laches must

be pled affirmatively. Tex.R. Civ. P. 94. Exxon did not plead laches, and it did not assert laches in its motion for summary judgment. We express no opinion regarding whether laches might have applied in this case.

8. As part of its argument under issue two, Exxon asserts it did not commit fraud because the purported easement exists, either expressly or by estoppel. Because Exxon prevails on its fraud claim under issue one, we do not reach issue two.

claim was not timely pursued. *See generally Hoarel Sign Co. v. Dominion Equity Corp.,* 910 S.W.2d 140, 143 (Tex.App.-Amarillo 1995, writ denied). The purpose of an equitable cause of action to quiet title is to remove a "cloud" on title when no other way exists to establish the invalidity of the encumbrance. Ford had a way. Ford was a party to the 1999 easement amendment and asserted a fraud claim to declare it invalid. His assertion of this claim was untimely. If a party has a claim that is not timely pursued, equity does not generally provide a remedy. *See Rogers v. Daniel Oil & Royalty Co.,* 110 S.W.2d 891, 894, 130 Tex. 386 (Tex.1937)("[R]ule that equitable relief will not be awarded by our courts where there is a complete and adequate remedy at law is too well imbedded in our judicial system to admit of dispute."); *Frost v. Wolf,* 77 Tex. 455, 14 S.W. 440, 443 (1890) ("[E]quity aids the vigilant, and not those who slumber on their rights."). The equitable claim asserted here is redundant, if not entirely dependent on the success of the legal claim. The majority should not affirm on the equitable claim while reversing on the legal claim.