**Opinion filed October 31, 2014**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00132-CV

_____

## LANDOVER PRODUCTION COMPANY, LLC, Appellant

## V.

## ENDEAVOR ENERGY RESOURCES, L.P. AND WELLS FARGO ENERGY CAPITAL, LLC, Appellees

**On Appeal from the 132nd District Court**

**Borden County, Texas**

**Trial Court Cause No. 1195**

### M E M O R A N D U M   O P I N I O N

Endeavor Energy Resources, L.P. and Wells Fargo Energy Capital, LLC (referred to as Endeavor) were the working interest owners under an 80-acre oil and gas lease in Borden and Dawson Counties. Landover Production Company, LLC held a "top lease" on the same 80 acres. Landover sued Endeavor and claimed that the Endeavor lease had automatically terminated due to a cessation of production from the one and only well on the property. Therefore, Landover

argues, its "top lease" was the only valid and subsisting oil and gas lease on that 80-acre tract.

After a jury trial, the jury disagreed with Landover and instead agreed with the position propounded by Endeavor and found that, for the period of May 2001 through the end of August 2001, cessation of production was excused in accordance with the implied doctrine relating to temporary cessations of production. The jury also found in favor of Endeavor on adverse possession issues under the three-year, five-year, and ten-year statutes. In accordance with the verdict of the jury, the trial court entered a take-nothing judgment against Landover. It held that the Endeavor lease had not terminated and further that Endeavor was the owner of the oil, gas, and mineral leasehold estate on the 80-acre tract by virtue of adverse possession under the three-year, five-year, and ten-year statutes.[1] We affirm.

In a single issue on appeal, Landover maintains that "[t]he jury's finding there was a cessation of production is not supported by the evidence." Although Landover does not specify whether its claim is a legal insufficiency claim or a factual insufficiency claim, we take it to be one of legal insufficiency because Landover asks this court to reverse and render judgment that the "lease terminated on or about May 1, 2001, and before August 31, 2001, and that [Landover] holds a valid and existing lease." Endeavor argues that, while there may have been a temporary cessation of production during that period of time, there was no termination of the lease. It further takes the position that, in any event, it owns the lease by virtue of adverse possession.

We will first discuss the cessation of production issue. We do not find that there is, in essence, a great deal of disagreement, if any, about whether there was a

[1]Landover informs us that there were other defendants to the lawsuit in the trial court but that all of them except Endeavor and Wells Fargo were dismissed from the suit prior to the entry of judgment. Landover, Endeavor, and Wells Fargo are the only parties named in the notice of appeal.

cessation of production under the Endeavor lease. Endeavor basically agrees with Landover that, during the May 2001 through August 2001 time period, it was having trouble with a heater-treater used to separate the oil and water that came from the well. There was a hole in the heater-treater, and the leak made it impossible or impractical to produce the well. There were other problems such as access to the site to make repairs during rainy weather. The only real dispute on appeal is whether the admitted cessation of production terminated the Endeavor lease. The dispute revolves around the following language in Endeavor's lease:

> If at the expiration of the primary term oil and gas is not being produced on said land but Lessee is then engaged in drilling or re-working operations thereon, the lease shall remain in force so long as operations are prosecuted with no cessation of more than thirty (30) consecutive days, and if they result in the production of oil and gas so long thereafter as oil and gas is produced from said land.

The quoted portion of the lease contains what is known as a savings clause. Savings clauses come in a myriad of forms with a myriad of provisions. In this case, pursuant to the savings clause, if *at the expiration of the primary term* there is no production on the lease, then the lease will nevertheless remain in force, or will be saved from automatic termination, if the "[l]essee is then engaged in drilling or re-working operations" on the lease and if such "operations are prosecuted with no cessation of more than thirty (30) consecutive days." If production is obtained in that period of time and under those conditions, the lease will continue, or be saved from automatic termination, for "so long thereafter as oil and gas is produced from" the property.

The savings clause never came to fruition in this case because, as is undisputed, there was production at the end of the primary term. An examination of the savings provision in this case reveals that the savings clause applies only "*[i]f at the expiration of the primary term* oil and gas is not being produced on said

land" (emphasis added). And, perhaps unlike many other oil and gas leases, there are no other terms in the lease in this case that would act as a savings clause *during the secondary term* of the lease.

When an oil and gas lease does not contain a savings clause applicable to the secondary term of the lease, absent other considerations not relevant here, it terminates automatically upon cessation of production during the secondary term. *Watson v. Rochmill*, 155 S.W.2d 783, 784 (Tex. 1941). Nonexclusive examples of savings provisions that will nonetheless keep a lease alive past that point are those that pertain to shut-in royalties, continuous operations, and drilling operations. *Krabbe v. Anadarko Petroleum Corp.*, 46 S.W.3d 308, 315 (Tex. App.—Amarillo 2001, pet. denied).

In order to avoid the harsh results brought about by automatic termination of an oil and gas lease that contains no such express savings clauses, courts have impressed upon such a lease a "necessarily implied" temporary cessation of production clause. *Id.* (citing *Midwest Oil Corp. v. Winsauer*, 323 S.W.2d 944, 946 (Tex. 1959)). Under the temporary cessation of production doctrine, the "automatic termination rule is relaxed if the lessee can prove that the cessation of production is temporary and is due to sudden stoppage of the well, some mechanical breakdown of the equipment used in connection therewith, 'or the like.'" *Id.* (citing *Amoco Prod. Co. v. Brauslau*, 561 S.W.2d 805, 809–10 (Tex. 1978); *Midwest Oil Corp.*, 323 S.W.2d at 947; and *Watson*, 155 S.W.2d at 784).

Again, the only savings clause contained in the lease in this case applied to the primary term, not to the secondary term. Therefore, in accordance with the temporary cessation of production doctrine, there was no termination of the lease if Endeavor "prove[d] that the cessation of production after the primary term [was] temporary and [that it was] due to sudden stoppage of the well, some mechanical breakdown of the equipment used in connection therewith, 'or the like.'" *Id.* A

4

lessee must also prove that it acted with diligence and remedied the cause of the temporary cessation and resumed production within a reasonable time. *Id.* at 315–16.

The first question is, then, did Endeavor prove that the cessation of production after the primary term was temporary and that the temporary cessation of production was the result of a sudden stoppage of the well, or a mechanical breakdown of some of the equipment used in connection with the well, or something like that? We find ample evidence in this record to support the finding that the answer to that question is in the affirmative.

As we have indicated, in May 2001 it was discovered that a hole had developed in the heater-treater used in connection with the well. The well produced both oil and water, and the heater-treater was used to separate the oil from the water so that each might be stored in separate storage tanks. Testimony showed that the oil would not have been marketable in the absence of the separation process. Because of the hole in the heater-treater, not only could the oil not be separated as required, but the result also was that the oil and water leaked onto the surface of the property, a condition that would worsen if production were continued using the leaking heater-treater. There was testimony that leaks such as these could also draw fines and sanctions from the Texas Railroad Commission.

The evidence also shows that several attempts were made to repair the leak in the heater-treater. When Endeavor attempted to make the repairs, it was necessary to turn off the well. Endeavor turned the well back on when it was thought that the repairs were successful. When its workers discovered that repair efforts had been unsuccessful, Endeavor again turned the well off so that the workers could attempt additional repairs. Endeavor was hampered in its efforts by uncooperative, wet weather. Finally, in August 2001, after several attempts to

repair the heater-treater, Endeavor was successful and production from the well resumed without further cessation.

Endeavor additionally had to prove that it acted with diligence and that it remedied the cause of the temporary cessation and resumed production within a reasonable time. However, Landover has not claimed on appeal that Endeavor did not do that. Landover's only complaint about Endeavor's diligence and reasonableness is that "reasonable production alternatives were not utilized." We do not find that to be Endeavor's burden under the facts of this case.

Landover has cited us to an abundance of cases in which courts address continuous drilling operations, reworking operations, and repairs to downstream equipment. Those cases are inapposite to the case before us. In those cases, the parties to those leases provided for explicit savings clauses; the courts applied and interpreted those specific clauses under the various facts in those cases. Here, there are no such clauses applicable to the secondary term. In the absence of any of those clauses here, the implied temporary cessation of production doctrine applies. The evidence is more than sufficient to support the answers of the jury and the judgment of the trial court that Endeavor's lease did not terminate for cessation of production because production was excused under the implied temporary cessation of production doctrine. Landover's sole issue on appeal is overruled.

Even if we are in error regarding the application of the temporary cessation of production doctrine, Landover would not prevail. The jury found, and the trial court adjudged, that Endeavor alternatively held title to the leasehold estates by adverse possession. Landover has not challenged those findings or holdings, and Endeavor holds the lease under the same terms and conditions as its original lease. *See Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 189 (Tex. 2003). (termination issue not reached because evidence supported adverse possession, and

6

under that adverse possession, lessees held fee simple determinable interests under the same terms as those under the leases involved).

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


October 31, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.