ACCEPTED
04-15-00074-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
12/1/2015 5:28:25 PM
KEITH HOTTLE
CLERK

## CAUSE NO. 04-15-00074-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
12/01/15 5:28:25 PM
KEITH E. HOTTLE
Clerk

# IN THE COURT OF APPEALS FOR THE FOURTH COURT OF APPEALS DISTRICT OF TEXAS, SAN ANTONIO, TEXAS

## STACEY SCOTT,
Appellant

## VS.

## LARRY FURROW AND KELLER WILLIAMS LEGACY GROUP,
Appellees

### ON APPEAL FROM THE 25TH JUDICIAL
### DISTRICT COURT OF GUADALUPE COUNTY, TEXAS
### CAUSE NO. 13-1125-CV-A

## BRIEF OF APPELLEES

THORNTON, BIECHLIN, REYNOLDS
& GUERRA, L.C.
**Vaughan E. Waters**
State Bar No. 20916700
100 N.E. Loop 410, Suite 500
San Antonio, Texas 78216
210-342-5555; 210-525-0666 (fax)
**ATTORNEYS FOR APPELLEES**

**ORAL ARGUMENT REQUESTED**

## NAMES OF THE PARTIES

Pursuant to and in compliance with Rule 38, Tex. R. App. P., the parties to this appeal are:

**STACEY SCOTT,** Appellant

COUNSEL FOR APPELLANT:    **ANDREWS KURTH LLP**
Mr. Frederick Junkin
State Bar No. 11058030
600 Travis St., Suite 4200
Houston, TX 77002
713/220-4766; 713/238-7387 (fax)
fredjunkin@andrewskurth.com

**LARRY FURROW AND KELLER
WILLIAMS LEGACY GROUP,** Appellees

COUNSEL FOR APPELLEES:    **THORNTON, BIECHLIN, REYNOLDS &
GUERRA, L.C.**
Mr. Vaughan E. Waters
State Bar No. 20916700
100 N.E. Loop 410, Suite 500
San Antonio, Texas 78216
210/342-5555; 210/525-0666 (fax)
vwaters@thorntonfirm.com

TRIAL COURT JUDGE:    **The Honorable W.C. Kirkendall
25th Judicial District Court
Guadalupe County, Texas**

## REQUEST FOR ORAL ARGUMENT

Pursuant to Rule 39, Tex. R. App. P., Appellees respectfully request oral argument in this case.

# TABLE OF CONTENTS

**Page**

NAMES OF THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (i)

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (ii)

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (iii)

LIST OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (iv)

I.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       (1)   ISSUE NO. 1: THE TRIAL COURT ACTED CORRECTLY IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON THE CLAIMS AND CAUSES OF ACTION ASSERTED BY SCOTT (Responsive to Appellant's Issue Nos. 1 and 2)

       (2)   ISSUE NO. 2: SCOTT HAS FAILED TO PRESERVE ERROR AS TO THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF APPELLEES ON THEIR COUNTERCLAIM FOR ATTORNEY'S FEES (Responsive to Appellant's Issue Nos. 3 and 4)

III. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.   ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . 16

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# LIST OF AUTHORITIES

**CASES**                                                                    **PAGE**

*Cantu v. Preacher*, 53 S.W.3d 5 (Tex. App.-San Antonio 2001,
pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Estate of Jobe v. Berry*, 428 S.W.3d 888, 902
(Tex. App.-Texarkana 2014, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 26

*Exxon Mobil Chemical Company v. Ford*, 187 S.W.3d 154
(Tex. App.-Beaumont 2006), *reversed in part on other grounds*,
235 S.W.3d 615 (Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Farroux v. Denny's Restaurants, Inc.*,
962 S.W.2d 108 (Tex. App.-Houston [1st Dist.] 1997, no pet.) . . . . . . . . . . . . 12

*Ford v. Exxon Mobil Chemical Company*, 235 S.W.3d 615, 616
(Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*HECI Exploration Company v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998). . . . . . 20

*Isaacs v. Schleier*, 356 S.W.3d 548, 562
(Tex. App.-Texarkana 2011, pet. denied) . . . . . . . . . . . . . . . . . . . . . . 26

*Lesieur v. Fryar*, 325 S.W.3d 242 (Tex. App.-San Antonio
2010, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Marker v. Garcia*, 185 S.W.3d 21
(Tex. App.-San Antonio 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . 34

*NRC, Inc. v. Pickhardt*, 667 S.W.2d 292 (Tex. App.-Texarkana
1984, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ojeda de Toca v. Wise*, 748 S.W.2d 449 (Tex. 1988) . . . . . . . . . . . . . . . . . . 17

*Salinas v. Gary Pools, Inc.*, 31 S.W.3d 333

(Tex. App.-San Antonio 2000, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Santiago v. NovaStar Mortgage, Inc.*, 443 S.W.3d 462, 471
(Tex. App.-Dallas 2014, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sherman v. Sipper*, 137 Tex. 85, 152 S.W.2d 319, 320-321 (1941) . . . . . . . . . 22

*Southwest Olshan Foundation Repair Company, LLC v. Gonzalez*,
345 S.W.3d 431, 437 (Tex. App.-San Antonio 2011),
*aff'd*, 400 S.W.3d 52 (Tex. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex. App.-Houston [14th Dist.]
2008, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Watts v. Oliver*, 396 S.W.3d 124, 135
(Tex. App.-Houston [14th Dist.] 2013, no pet.) . . . . . . . . . . . . . . . . . . 35

*Westland Oil Development Corporation v. Gulf Oil Corporation*,
637 S.W.2d 903 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATUTES, RULES, AND OTHER AUTHORITIES

Tex. Civ. Prac. & Rem. Code §§16.003, 16.004 . . . . . . . . . . . . . . . . . . . . . . 27

Tex. R. App. P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Tex. R. App. P., Rule 33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. R. App. P. 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (i)

Tex. R. App. P. 39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (ii)

Tex. R. App. P., Rule 44.4(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Tex. Bus. & Comm. Code §17.50. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Tex. Bus. & Comm. Code §17.565. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

CAUSE NO. 04-15-00074-CV

IN THE COURT OF APPEALS FOR THE FOURTH COURT
OF APPEALS DISTRICT OF TEXAS, SAN ANTONIO, TEXAS

STACEY SCOTT,
Appellant

VS.

LARRY FURROW AND KELLER WILLIAMS LEGACY GROUP,
Appellees

ON APPEAL FROM THE 25TH JUDICIAL
DISTRICT COURT OF GUADALUPE COUNTY, TEXAS
CAUSE NO. 13-1125-CV-A

BRIEF OF APPELLEES

TO THE HONORABLE JUSTICES OF THE FOURTH COURT OF APPEALS OF
THE STATE OF TEXAS, SAN ANTONIO, TEXAS:

NOW COME LARRY FURROW AND KELLER WILLIAMS LEGACY

GROUP, Appellees in the above entitled and numbered cause, and file this their Brief

of Appellees, pursuant to and in accordance with Rule 38.2, Tex. R. App. P.; and in

support thereof would respectfully show this Honorable Court as follows:

1

# I.

## STATEMENT OF THE CASE

This is an appeal from a summary judgment entered November 13, 2014 in the 25th Judicial District Court of Guadalupe County, Texas, the Hon. W.C. Kirkendall presiding, in favor of Appellees LARRY FURROW ("FURROW") and KELLER WILLIAMS LEGACY GROUP ("KELLER WILLIAMS") and against Appellant STACEY SCOTT ("SCOTT"). Pursuant to this judgment the claims and causes of action of SCOTT against FURROW and KELLER WILLIAMS were severed from her claims and causes of action against other individuals (not parties to this appeal), and later made final by the trial court's judgment of February 24, 2015 awarding attorney's fees and costs in favor of Appellees. Supp. C.R. (04/29/2015), at 2-5, 38-40.

# II.

## ISSUES PRESENTED

> ISSUE NO. 1: THE TRIAL COURT ACTED CORRECTLY IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON THE CLAIMS AND CAUSES OF ACTION ASSERTED BY SCOTT (Responsive to Appellant's Issue Nos. 1 and 2)

> ISSUE NO. 2: THE TRIAL COURT ACTED CORRECTLY IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLANTS ON THEIR COUNTERCLAIM FOR ATTORNEY'S FEES (Responsive to Appellant's Issue Nos. 3 and 4)

2

# III.

## STATEMENT OF FACTS

This a tale of three lots located on the Guadalupe River. They are referred to in SCOTT's pleadings and in her Appellant's Brief as "Lots 1, 2 and 3", and for convenience will be referred to likewise here. Lot 2—also known as 1104 Peggy Lane, Seguin, Texas—was and is an improved residential lot purchased by SCOTT from Juanita Denn and D.R. Barr (Defendants in the underlying case but not parties to this appeal). SCOTT—then a litigation paralegal of more than fifteen years' experience—and the sellers entered into an earnest money contract on April 22, 2006 to purchase Lot 2, and the sale closed on May 22, 2006. Appellant's Brief, at 4; II Supp. C.R., Vol. 1, at 18-19. FURROW and KELLER WILLIAMS were the realtor and brokerage involved in this transaction, and FURROW was the listing agent. *Id.*

FURROW showed Lot 2 to SCOTT before she entered into the earnest money contract. When she viewed Lot 2 she observed that it did not abut the actual riverbank; as she testified in her deposition:

> Q [by Mr. Cline]: You knew that that house did not sit on the banks of the Guadalupe River, that there was other properties between that house and the river?
>
> A [by Ms. Scott]: That is correct.

II Supp. C.R., Vol. 2, at 222. Although SCOTT does not remember the exact words FURROW used, she had an understanding that the purchase of Lot 2 was tied to an interest in a waterfront access property—Lot 1—which FURROW showed her as part of the property tour. *Id.* As SCOTT explained it in her deposition taken January 15, 2014:

Q [by Mr. Cline]: Alright. Did you think you were buying that other lot [Lot 1] in its entirety or did he explain that it's—people that have lots in this vicinity have access through that particular lot?

A [by Ms. Scott]: I was—no, he explained that there—by purchasing 1104 Peggy Lane, I would be purchasing a legal interest in that waterfront access lot [Lot 1].

Q: Right. Shared with others?

A: I don't know.

II Supp. C.R., Vol. 2, at 224. More particularly:

Q: You thought that you had the—the exclusive access to that waterfront area?

A: I didn't at the time know who all had access to the lot.

Q: Did you think when you bought the property that you had exclusive access to the waterfront lot?

A: *I don't believe I ever thought I had exclusive access to the lot. I believe I had a legal right to the lot, a legal interest and I believed that's what I was purchasing.*

II Supp. C.R., Vol. 2, at 225 (emphasis added). And when asked, "And so 1104 Peggy Lane does provide waterfront access"? SCOTT testified: "Yes." II Supp. C.R., Vol. 2, at 229.

SCOTT punctuated the point once more, later in her deposition:

Q: All right. Well, you're not claiming that Mr. Furrow told you had exclusive access to that waterfront lot, are you?

A: *I don't recall what specifically was said in terms of exclusivity of the property.* I just know that it was sold as a legal right to—as waterfront access to—in conjunction with buying 1104 Peggy Lane.

II Supp. C.R., Vol. 2, at 230 (emphasis added).

One year later, in May 2007, SCOTT purchased the adjoining vacant lot located at 1110 Peggy Lane, Seguin, Texas (Lot 3); she alleges in her First Amended

4

Petition that, based on what was represented to her by the owners of that lot (Juanita Denn and D.R. Barr, likewise the owners/sellers of Lot 2) and by FURROW the previous year, she was "solidifying" her "exclusive" ownership rights to Lot 1, the waterfront access property. II Supp. C.R., Vol. 1, at 18-19. FURROW and KELLER WILLIAMS were not involved in any way with SCOTT's purchase of Lot 3. II Supp. C.R., Vol. 2, at 221, 236.

On March 23, 2011 SCOTT believed an issue had arisen with respect to the access of Lots 2 and 3 to the Guadalupe River. She inquired by e-mail of attorney Robert Ritter (again, a Defendant in the underlying proceeding but not a party to this appeal); as she put it, "I e-mailed Robert Ritter and inquired about the discrepancy between the vacant lot waterfront ownership to the access property and 1104 Peggy Lane." II Supp. C.R., Vol. 2, at 232. That e-mail was never responded to. *Id.* She does not recall what prompted her to send the e-mail, but it had something to do with the vacant lot, Lot 3. *Id.* As she testified, she "[q]uestioned [her] ownership rights to the water access lot in conjunction with 1110 Peggy Lane [Lot 3]." II Supp. C.R., Vol. 2, at 238. More particularly:

> Q: That's when you first thought, "Maybe I don't have waterfront access rights"?
>
> A: Yeah, that's when I first questioned whether or not I did and tried to inquire.
>
> Q: And that's when you kind of began this—trying to discover "what do I have or not have"?
>
> A: Correct...

II Supp. C.R., Vol. 2, at 251-252.

SCOTT described her claim against FURROW, KELLER WILLIAMS, and the other underlying Defendants regarding waterfront access as follows:

> Q [by Mr. Cline]: In other words, you're not trying to tell the jury, "I thought the home at 1104 was on the waterfront and it's not"? You're telling the jury, "I thought I had access to this lot, the one that I've drawn in on the waterfront, and I don't"?
>
> A [by Ms. Scott]: Well, I think the problem lies in the use of the term "waterfront." I mean, yes, I'm a litigation paralegal of 24 years, but I'm not—I left Texas when I was 16, 17 years old. So I'm not familiar with, you know, the terms that are used here. And I've seen other attorneys use the term "waterfront" loosely in conjunction with the same properties. So if there's—
>
> Q: All right. Let me see if we can divide it up. I'm just trying to make sure we understand each other. Just considering the home, 1104—I'm not talking about the waterfront access. All right. You're not claiming, "I thought this home at 1104 was on the waterfront and it's not"? That's not your claim; correct?
>
> A: My claim is that I was sold something that doesn't exist.
>
> MR. JEMELA: Objection, non-responsive.
>
> MR. McNEIL: Same objection.
>
> Q [by Mr. Cline]: Yeah. I'm still—what are you saying doesn't exist?
>
> A [by Ms. Scott]: I'm saying that the picture that is associated with this advertisement and what was sold as a part of 1104 Peggy Lane—and I'm referring to Exhibit A-2 of my petition—the ownership rights don't exist as were sold to me.
>
> Q: Okay. Your contention is 1104 Peggy Lane does not have access to that neighborhood park or that waterfront lot or whatever you want to call it?
>
> A: Correct. It's neither waterfront nor waterfront access.

II Supp. C.R., Vol. 2, at 243-244.

SCOTT was questioned very specifically on this point so as to nail down the nature of her claim:

6

Q [by Mr. Cline]: If it turns out that 1104, in fact, does enjoy the right to use that waterfront lot, would you still have any claim or any—any claim against Mr. Furrow? Would you feel like there was a problem with your purchase from him?

A [by Ms. Scott]: I would still have a claim, yes.

Q: What would it be?

A: I haven't assessed it fully.

Q: Okay. As we sit—in other words, let's assume hypothetically that we go to court this afternoon and the judge in Seguin says, "I have looked at the deed records and I've looked at the plats and I've looked at the restrictions, and the waterfront lots and boat ramps may be accessed by the owner of 1104 Peggy Lane. 1104 Peggy Lane does, in fact, enjoy waterfront access rights." If the court said that, what would your complaint against Mr. Furrow be?

A: Assuming that someone produced a dedication deed?

A: Assuming that a court—whether it's a dedication deed or what, assuming that a judge today says, "No, I decree and declare the owner of 1104 Peggy Lane has the rights to waterfront access on these two lots"---

A: The legal ownership rights.

Q: Yes. Yes. Assuming that, what would your complaint against Mr. Furrow be?

A: I haven't—I mean, if you're asking me to assess what my damages are right here and now—

Q: No, no, no, not your damages.

A: Well, if I had a claim against Larry Furrow today, right here, right now—

Q: Yes.

A: —you're asking me to assess the value?

Q: No, I'm not.

A: You're asking me if I have a claim?

7

Q: What I'm saying is—you understand my hypothetical? That a judge says West and West is wrong, 1104 does enjoy access to the waterfront through the two lots that you drew in on number 4. *Now, that would be what Mr. Furrow told you he was selling you, right?*

A: The legal right to waterfront access?

Q: Yes.

A: *Yes.*

Q: Okay. So let's assume hypothetically that that's what happens. So then what, then, would your complaint against Mr. Furrow be? What would you say he did to harm you or damage you? I'm not asking an amount. I'm asking what would the claim be?

A: I'm not prepared to assess my claim or what my claim would be right here right—

Q: Well, I want you to give your best effort right now to say, "Well, assuming he sold me what he said he was going to sold me, he still harmed me by," and you fill in the blank. Tell me what it is as best you can.

A: I wouldn't be prepared to do that right now as best I can. I mean, that would take time and consideration to determine what—

Q: So you can't tell me?

A: Right at this point in time, no, I can't.

Q: Because isn't that your complaint against—I mean, that's the only complaint you have against Mr. Furrow as we sit here today, right? "He sold me this property and he said I had waterfront access rights and I don't." Isn't that your complaint against Mr. Furrow?

A: *Yes.*

Q: I mean, that's your only complaint against Mr. Furrow, right?

A: *Yes.*

II Supp. C.R., Vol. 2, at 248-251 (emphasis added).

SCOTT testified further regarding this complaint by analogizing 1104 Peggy Lane to her other property, 634 Ashmore Avenue in New Braunfels: "Both—my

property at 634 Ashmore Avenue is also—*it's not waterfront, but it's water access. It's literally identical, an identical situation and I closed escrow on Ashmore two weeks prior to closing escrow on Peggy Lane.*" II Supp. C.R., Vol. 2, at 240 (emphasis added). Further in that regard:

> Q [by Mr. Cline]: In other words, Ashmore is a home that sits off away from the river, but it has access to a lot that's on the river?
>
> A [by Ms. Scott]: Two lots, correct, lot A and lot B. 64 (sic) Ashmore Avenue in New Braunfels is situated in the Guada Coma neighborhood in the historic district of New Braunfels. And it has private water access to two lots to both the Comal River and the Guadalupe River.
>
> Q: Right. And that's not exclusive access, is it?
>
> A: It's exclusive to Guada Coma neighborhood.
>
> Q: Right. Okay.
>
> A: Which is what, I believe, was similar to what Larry was advertising. And to be clear, when I closed on the 634 Ashmore property, it's not—there's no mention in the deed or anything on the actual house that references the access lots, *but there's a dedication deed that exists.* And already having that knowledge, when I closed escrow on 1104 Peggy Lane and dealt with Larry Furrow, *I mirrored exactly my situation with Ashmore.* So I was comfortable with that.
>
> Q: And you had done Ashmore before that?
>
> A: Two weeks before.

II Supp. C.R., Vol. 2, at 240-241 (emphasis added).

Mr. Cline then directed SCOTT's attention in her deposition to a certified copy of the Guadalupe County Deed Records authorizing the filing of the plat of A.J. Grebey Subdivision No. 1. II Supp. C.R., Vol. 2, at 261; II Supp. C.R., Vol. 1, at 197-198. SCOTT conceded that Lot 1 "is a park for the purpose of granting the lot owners [of the subdivision] access to Lake McQueeney." II Supp. C.R., Vol. 2, at 264. Further:

9

Q [by Mr. Cline]: Exhibit 8, do you see, is a certified copy of the plat of the A.J. Grebey Subdivision No. 1 and we see Lot 2 would be 1104 Peggy Lane; right?

A [by Ms. Scott]: Yes.

Q: And then Lot 1 would be the waterfront access lot—

A: It would be.

Q: —that Mr. Furrow told you had access to if you bought Lot 2; right?

A: A legal to, an ownership right.

*Id.*

Subsequent to her deposition, on March 4, 2014 SCOTT filed her First Amended Petition. II Supp. C.R., Vol. 1, at 14. Although she had testified clearly, expressly and unequivocally that her complaint against FURROW and KELLER WILLIAMS was that she had been "sold something that doesn't exist"—that is, that Lot 2 was "neither waterfront nor waterfront access"—and that what FURROW had told her was being sold was "the legal right to waterfront access", she attempted to change her theory of the case. The gravamen of her complaint went from "he sold me this property and he said I had waterfront access rights and I don't" to "he sold me this property and he said I had *exclusive* waterfront access rights and I don't"—although, again, her sworn testimony had been that when she closed on Lot 2 she had not expected to receive, and did not believe she was receiving, *exclusive* waterfront access rights. II Supp. C.R., Vol. 2, at 251; II Supp. C.R., Vol. 1, at 19.

On May 6, 2014 FURROW and KELLER WILLIAMS moved for summary judgment. II Supp. C.R., Vol. 1, at 177. While several grounds of summary judgment were alleged, chief among these was that "[a]ll of Plaintiff's claims are barred by the statute of limitations." II Supp. C.R., Vol. 1, at 182.

10

In particular, FURROW and KELLER WILLIAMS pointed out that the documents that would provide the information concerning the nature and extent of SCOTT's legal rights in Lot 2 (the only lot as to which she asserts claims against these parties) were of public record at the time of closing in the Guadalupe County real property records. In addition, SCOTT's March 23, 2011 e-mail to attorney Robert Ritter—sent two years and two months prior to her filing of the instant lawsuit—*expressly raised the issue of whether and to what extent she had been granted the waterfront access she was led to believe she was acquiring in the purchase of Lots 2 and 3. Id.*

SCOTT, in her response filed October 15, 2014, urged that her claims are saved by the discovery rule:

> Under the "discovery rule", Plaintiff's claims were precipitated against Defendants when she received an e-mail from attorney for Defendant, Juanita Denn and Patrick Denn (Mr. West), on April 17, 2013, who stated as follows: " We have checked with our client and there is no documentation, at least recorded that we know, that shows the right to the gated waterfront park." (See Plaintiff's depo. 55:11-23).

II Supp. C.R., Vol. 2, at 10-11.

In addition to the limitations ground, FURROW and KELLER WILLIAMS set forth the ground that the summary judgment evidence conclusively establishes—by SCOTT's own deposition testimony—the absence of the gravamen of her claims and causes of action, as follows:

> 19.    In addition to the limitations issues, Plaintiff has contradicted her claims of DTPA violations, negligent misrepresentation, fraud, and fraud by non-disclosure regarding the Waterfront Park, by her own deposition testimony where she admitted that she was led to believe by Larry Furrow that her access to the Waterfront Park was shared with her neighbors, which is what she has. *See Exhibit 9, Deposition Testimony of Stacy Scott, P. 26, L. 11 - P.*

11

*27, L. 17. See also, Deposition Testimony of Stacy Scott page 42, line 5 - page 43, line 9, hereinafter referred to as Exhibit 11.*

II Supp. C.R., Vol. 1, at 182. (Under the sham affidavit doctrine, a party may not submit an affidavit in support of or in opposition to a summary judgment motion which contradicts that party's previous sworn deposition testimony, absent a clear explanation within the affidavit for any such discrepancy. *Farroux v. Denny's Restaurants, Inc.*, 962 S.W.2d 108 (Tex. App.-Houston [1ˢᵗ Dist.] 1997, no pet.)).

SCOTT's "Supplemental Supportive Affidavit" to her summary judgment response, filed October 20, 2014, squarely contradicts her earlier deposition testimony. In that regard, SCOTT states in the affidavit that

> [i]n 2006, I purchased Lot 2 and what I believed was a one-half interest in Lot 1 (the waterfront/water access lot associated with the property I was purchasing). At the suggestion of [FURROW and KELLER WILLIAMS] (sellers' listing agent), one year later (in 2007), I purchased Lot 3 (the adjoining vacant lot to Lot 2) directly from [Ms. Denn and Mr. Barr] ("sellers"), so as to acquire exclusive ownership of the waterfront/water access property.

II Supp. C.R., Vol. 2, at 491 (emphasis added).

On November 3, 2014 Judge Kirkendall, presiding judge of the 25ᵗʰ Judicial District Court of Guadalupe County, Texas, issued his letter ruling which was incorporated into his interlocutory summary judgment dated November 13, 2014. Supp. C.R. (04/29/15), at 2-5. By this order Judge Kirkendall granted the traditional summary judgment motion of FURROW and KELLER WILLIAMS (without specifically stating the grounds on which it was being granted), while denying the no-evidence summary judgment motion. This order further severed the claims and causes of action brought by SCOTT against FURROW and KELLER WILLIAMS, placing them under a separate cause number, thus preserving the counterclaim of

12

FURROW and KELLER WILLIAMS against SCOTT for attorney's fees for a later proceeding. *Id.*

Subsequently, on January 23, 2015, FURROW and KELLER WILLIAMS moved for summary judgment on their counterclaim against SCOTT for attorney's fees. II Supp. C.R., Vol. 1, at 169-177; Supp. C.R. (04/29/15), at 8-37. FURROW and KELLER WILLIAMS urged that they were entitled to attorney's fees on either of two alternative grounds: first, that they were the prevailing parties in a claim arising from the earnest money contract between SCOTT and the sellers of Lot 2, such that under the terms of the contract itself, particularly of para. 17 thereof, they are entitled to recover their reasonable and necessary attorney's fees incurred in defending against SCOTT's claim; and second, that SCOTT's actions—brought in part under the DTPA—are groundless in law and in fact, and brought in bad faith for the purpose of harassment within the meaning of Tex. Bus. & Comm. Code §17.50, thus entitling them to attorney's fees. *Id.*

On February 24, 2015 SCOTT filed her delinquent response to the summary judgment motion. Supp. C.R., at 4-63. The only issues raised in avoidance of summary judgment on the attorney's fees counterclaim were that "Defendants' billing summary for their attorney's fees does not distinguish what fees were expended for the issue [of statute of limitations] on which they prevailed" (Supp. C.R., at 6), and (b) that "Defendants are attempting to take a second bite at the apple by pleading issues and evidence, which have already been fully adjudicated" (Supp. C.R., at 7) (an argument to the effect that the November 13, 2014 interlocutory summary judgment order was in fact a final judgment).

13

The trial court entered its final judgment in the severed cause on February 24, 2015, reincorporating the earlier interlocutory summary judgment order, granting the summary judgment motion of FURROW and KELLER WILLIAMS on their attorney's fees counterclaim, and awarding attorney's fees for trial and appeal in the sum of $95,179.00. Supp. C.R. (04/29/15), at 38-40.

Meanwhile, on December 12, 2014, SCOTT had filed her "Motion for New Trial on Final Judgment As To Defendant Keller Williams Legacy Group and Larry Furrow's Summary Judgment." C.R., at 611-642. This new trial motion, however, addressed only the interlocutory summary judgment order on her own claims and causes of action (erroneously characterizing same as a "final judgment"), and did not address the issues raised in the counterclaim on attorney's fees or the grounds of summary judgment thereon. *Id.*

On March 26, 2015 SCOTT filed her new trial motion on the attorney's fees counterclaim. Supp. C.R., at 41-123. The sole issue raised in support of the motion was to the effect that SCOTT was entitled to a new trial "in the interest of justice and fairness because Defendants [FURROW and KELLER WILLIAMS] withheld key evidence, which they used against her in their motion for summary judgment." Supp. C.R., at 41. This related to an issue of whether FURROW and KELLER WILLIAMS had properly produced invoices for attorney's fees and written discovery. *Id. No other issue was raised.* This motion was overruled by order dated May 7, 2015. App. I.

This appeal ensues.

14

## IV.

## SUMMARY OF THE ARGUMENT

It is undisputed—indeed, SCOTT freely concedes—that SCOTT filed the instant lawsuit (1) seven years to the month after she acquired title to Lot 2 by a deed which conveyed only Lot 2 and the rights associated therewith, (2) six years to the month after she acquired Lot 3 by a deed which conveyed only Lot 3 and the rights associated therewith (and in which transaction and conveyance neither FURROW nor KELLER WILLIAMS played any part whatsoever), and (3) asserting claims which all revolve around the theory that she acquired in both these conveyances what she testified clearly, expressly, unequivocally and under oath in her deposition was *precisely* the form of waterfront access to which she felt she was entitled by the representations of FURROW and KELLER WILLIAMS, and which she expected to receive. Summary judgment was properly granted on all claims and causes of action asserted by SCOTT against FURROW and KELLER WILLIAMS.

As to the latters' counterclaim against SCOTT for attorney's fees, and the trial court's grant of summary judgment on that counterclaim, *SCOTT has utterly failed to preserve error in accordance with Rule 33, Tex. R. App. P. as to any complaint whatsoever about that summary judgment*—and the facial speciousness of SCOTT's arguments both at the trial court and in this appeal demonstrate eloquently the frivolousness and bad faith of her having asserted the underlying claims in the first instance.

The summary judgments granted by the trial court and incorporated into the final judgment rendered hereinbelow are correct and complete, and should be affirmed.

15

# V.

## ARGUMENT AND AUTHORITIES

ISSUE NO. 1 RESTATED: THE TRIAL COURT ACTED CORRECTLY IN GRANTING SUMMARY JUDGMENT FOR APPELLEES ON THE CLAIMS AND CAUSES OF ACTION ASSERTED BY SCOTT (Responsive to Appellant's Issue Nos. 1 and 2)

*A.*    *The claims and causes of action alleged against FURROW and KELLER WILLIAMS are conclusively barred by the two-year and four-year statutes of limitations*

Judge Kirkendall, in his initial letter ruling on the interlocutory summary judgment motion, explained his reasoning as follows:

> There appears to be no dispute that suit was filed outside the applicable statutes of limitation for each cause of action. The question before the Court is whether any "discovery rule" or "fraudulent concealment" have tolled the running of the statutes.

> It is clear that the law in Texas is that fraud prevents the running of the statute of limitations until it is discovered or by the exercise of reasonable diligence it might have been discovered. Ruebeck v. Hunt 176 SW2d 738 (Tex. 1943).

> However when a person has a right in property, and she claims fraudulent statements are made concerning title to the property, when the public records are open to her, she must exercise reasonable diligence to discover the defect. Exxon Mobil v. Ford, 187 SW3d 154 (Court of Appeals: Beaumont, 2006).

> Information contained in public records can be ascertained through reasonable diligence and is not inherently undiscoverable. Thus a person must exercise reasonable diligence, and if he could have

16

discovered a defect, she is held to have known it, and limitations will run against her. Swanson v. Stouffer & Assocs., 2014 WL 2522145 (Court of Appeals: Austin 2014).

Although it is not precisely clear what plaintiff is claiming (either exclusive or non-exclusive access to the waterfront), there is no question the precise nature of her title could have been ascertained from public record. Since she did not discover the defect, if any, she did not exercise due diligence. Therefore the applicable statutes of limitations are not tolled, and suit on her causes of action is banned.

The defendants' traditional motion for summary judgment is GRANTED in all things.

Supp. C.R. (04/29/2015), at 4-5.

SCOTT, in her Appellant's Brief, complains that this analysis is "contrary to long-standing precedent"—citing, *inter alia*, to the Texas Supreme Court's opinion in ***Ojeda de Toca v. Wise***, 748 S.W.2d 449 (Tex. 1988). In fact and in law it is SCOTT's position which is "contrary to long-standing precedent", and it is SCOTT who misunderstands and misapplies the cases on which she purports to rely.

In ***Ojeda de Toca*** the plaintiff purchased a house from the defendants, only to have the house demolished sometime after the purchase by the City of Houston pursuant to an order which had been filed previously in the Harris County deed records. The plaintiff filed suit against the seller and others, alleging violations of the DTPA, fraud in a real estate transaction, and negligence. The jury found, and the trial court rendered judgment, that the seller knew but failed to disclose that the property

17

was subject to the demolition order. The court of appeals reversed, concluding that recordation of the demolition order provided constructive notice and constituted a defense as a matter of law to the DTPA and fraud claims. *Ojeda de Toca*, at 450.

The Texas Supreme Court reversed the court of appeals, holding that record notice will not in all situations operate as a defense to a DTPA cause of action. In arriving at its conclusion the Court expressly distinguished two cases cited by the defendants—***Westland Oil Development Corporation v. Gulf Oil Corporation***, 637 S.W.2d 903 (Tex. 1982) and ***NRC, Inc. v. Pickhardt***, 667 S.W.2d 292 (Tex. App.-Texarkana 1984, writ ref'd n.r.e.)—in that those cases were, respectively, "a title dispute" and "a statute of limitations defense." *Id.*, at 451. *The instant case is both.* ***Ojeda de Toca*** has nothing to say about a situation in which the plaintiff complains first of having been sold a piece of property without waterfront access, and then—upon discovering in the course of her own deposition that yes, the property does indeed have waterfront access—changes her complaint to one that she was sold the full ownership interest in one particular lot, when she thought she was being sold that *plus* a one-half undivided interest in *another* particular lot (this even though the deed by which she acquired the property makes no reference whatsoever to a one-half undivided interest in anything).

18

*Ojeda de Toca* is inapposite not only because it dealt with issues other than title, but because it dealt with *the existence or non-existence of a cause of action*—not with the effect of the statute of limitations on that cause of action. In *NRC, supra*—a limitations case—the Texarkana Court of Appeals observed that "[a] purchaser of land has constructive notice of all information contained in his grantor's chain of title, and he is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in that chain [citing, *inter alia*, *Westland Oil, supra*]." *NRC*, at 294. Thus the court concluded that limitations barred the purchaser's cause of action for failure to disclose the existence of a Lower Colorado River Authority easement, as affecting his marketable title, since he was charged with actual notice of the easement. *NRC*, at 294. The court further observed, however, that "[n]one of the brochures or any other information furnished by NRC or reasonably available to Pickhardt indicated that his lots were below the 715-foot line, and it is conceded that such fact could only have been determined by a topographical survey." *Id.*, at 293. The court pointed out that a seller has a duty to disclose material facts affecting the suitability of the property for its intended use which would not be discoverable by the exercise of ordinary diligence on the part of the purchaser, and that where there is "such a failure to disclose, the statute of

19

limitations begins to run when the fraud is discovered or should have been discovered by the exercise of reasonable diligence." *Id.*, at 294.

So it is in the instant case: SCOTT's claims relate to the state of title to Lot 2 as it concerns waterfront access rights and the extent of her ownership of waterfront access rights—matters which can be determined quite simply by a review of her title deed and of the matters of record referenced in that deed. No topographical survey would have been needed. Indeed, even when a party does not have constructive notice of matters filed in the public record, "a cause of action for failure to provide that information is not inherently undiscoverable" for purposes of triggering limitations. *Santiago v. NovaStar Mortgage, Inc.*, 443 S.W.3d 462, 471 (Tex. App.-Dallas 2014, pet. denied) (quoting *HECI Exploration Company v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998)).

*Exxon Mobil Chemical Company v. Ford*, 187 S.W.3d 154 (Tex. App.-Beaumont 2006), *reversed in part on other grounds*, 235 S.W.3d 615 (Tex. 2007)—cited by Judge Kirkendall in his letter ruling—is very much on point. In that case Exxon Mobil's predecessor-in-title purchased a pipeline easement in 1998 from Ford's predecessor-in-title. A map showing the path of the proposed pipeline passing through the Antwine Mort survey ("the Mort"), the Munsen Bowes survey ("the Bowes"), and the Elias Stone survey ("the Stone") was attached to the agreement and

20

filed in the property records of Jefferson County, but the easement agreement itself did not incorporate the map by reference or otherwise referred to it; the text of the easement agreement did not mention the Stone. *Exxon Mobil*, at 156. Later that same year the two parties executed an easement amendment dealing with operational workspace; unlike the original easement agreement, however, the amendment did refer specifically to the Stone as well as to the Bowes and the Mort, reciting further that "all other terms and conditions of the above easement shall remain in force and effect." Ford subsequently purchased the Stone, the Mort, and the Bowes, among other tracts, by special warranty deed which recited that the conveyance was subject to the earlier recorded easement. Later still, in February 1999, Ford and Exxon Mobil executed another easement amendment, providing for a relocation of the proposed pipeline route, attaching a map thereof, and again referencing the original pipeline easement as being over and across, *inter alia*, the Stone. *Id.*

A few years later, in October of 2002, Ford read the original easement agreement and "became uncertain" that it created an easement across the Stone, so he wrote to Exxon Mobil about his concerns. He proposed to execute a "complete, perfected easement document" in exchange for 135 acres of land. Exxon Mobil, however, responded that it was of the opinion that the pipeline right-of-way crossing his property was adequately described in the existing easement. A year and a half

21

later, in March 2004, Ford sued Exxon Mobil seeking cancellation of the easement agreement, removal of the pipeline, removal of the alleged cloud on his title, and quieting of title; he also alleged statutory fraud against Exxon Mobil. Both parties filed traditional motions for summary judgment, the trial court granted that of Ford, and Exxon Mobil appealed. *Id.*, at 157.

The Beaumont Court of Appeals reversed. The court observed first that Ford's causes of action seeking cancellation of the easement and for statutory fraud fell within the four-year statute of limitations. "Fraud prevents the running of a statute of limitations only until the fraud is discovered or could have been discovered through the exercise of reasonable diligence." *Id.*, at 158 (citing **Sherman v. Sipper**, 137 Tex. 85, 152 S.W.2d 319, 320-321 (1941)). The court cited further, and with approval, to **Sherman**:

> [W]here a person has a right in property, and he claims fraudulent statements were made concerning the title to such property, when the records relating to such title are open to him he must exercise reasonable diligence to discover such defect; and if by the exercise of such diligence he could have discovered such defect and would have known of his right, he is held to have known it, and limitation will run against his claim from the time he could have made such discovery by the exercise of ordinary diligence.

*Id.*

Applying that principle, the court reasoned as follows:

22

The easement agreement does not include the Stone, yet the 1998 amendment recited that the easement crossed the Stone. If Ford had exercised reasonable diligence, he could have discovered the alleged fraud when he took title to the property by reading the original easement agreement, which did not mention the Stone, and the 1998 amendment that asserted an easement across the Stone existed. *Indeed, Ford testified that he "became uncertain" about whether an easement existed across the Stone after simply reading the original easement agreement.* Therefore, we reject Ford's contention that he could not have discovered the alleged fraud simply by reading the documents in his chain of title. We find that Exxon conclusively established when Ford's cause of action accrued, and there is no genuine issue of material fact as to when Ford should have discovered his cause of action...

*Id.*, at 158-159 (emphasis added). The court concluded that Ford's causes of action for cancellation of the easement and for fraud were time-barred; however, the court felt that the causes of action for quieting of title and removal of the alleged cloud on title survived limitations. *Id.*, at 159.

*The Texas Supreme Court reversed only as regards the quiet title causes of action, holding that **all** causes of action—not just fraud—were time-barred.* **Ford v. Exxon Mobil Chemical Company**, 235 S.W.3d 615, 616 (Tex. 2007). The Court had this to say:

On the merits, Ford argues the court of appeals erred in holding his fraud claim barred by limitations. The parties agree this claim had to be brought within four years of when the fraud should have been discovered by reasonable diligence...While not all public records establish an irrebuttable presumption of notice, *the recorded instruments in a grantee's chain of title generally do* [citing, *inter alia*, **Westland Oil Development Corporation**, *supra*].

23

*Ford*, at 617 (emphasis added). It is significant that the Court expressly cited *with approval* to **Westland Oil Development Corporation**, the very case it had distinguished earlier in **Ojeda de Toca**. As Judge Kirkendall observed in this case (perhaps pithily, given SCOTT'S flip-flop on her theory of the case), while it was not entirely clear whether SCOTT was complaining about lack of waterfront access or lack of exclusive waterfront access, in either event the documents in her chain of title told her what she needed to know on the subject as of the very date of closing on May 22, 2006. *Indeed, as and to the extent she complains of lack of "exclusive" access, her own deed from the grantees Denn and Barr clarifies the matter nicely, since it makes no reference at all to what she claims in her affidavit was the sought-after "one-half undivided interest in Lot 1."*

Although this Honorable Court's opinion in **Salinas v. Gary Pools, Inc.**, 31 S.W.3d 333 (Tex. App.-San Antonio 2000, no pet.)—cited and relied upon by SCOTT in her Appellant's Brief—predates by several years the holdings in *Ford* and, of course, could not survive an inconsistency with the Texas Supreme Court's opinion therein, nonetheless **Salinas** is easily distinguishable on its facts from the instant case. There the defendant installed a swimming pool in the plaintiffs' yard; originally the plan, as approved by the City of San Antonio, called for the pool to be installed in the backyard, but the defendant determined unilaterally that this was not

24

feasible and so informed the plaintiffs (without submitting a revised plan to the city) that it would install the pool in the side yard instead. Later, when the plaintiffs tried to sell their house, it was surveyed at the behest of a prospective buyer, whereupon it was discovered that the defendant had installed the pool partially on a public right-of-way easement—a fact which would not have been apparent from a visual view. The plaintiffs sued, and the defendant moved for summary judgment on limitations, which was granted. *Salinas*, at 335.

This Honorable Court reversed, citing to *Ojeda de Toca* for the proposition that constructive notice would not apply as a defense to claims brought under the DTPA. The Court also observed, however, as follows:

> [I]n [*HECI Exploration Company, supra*] the Texas Supreme Court noted that constructive notice of real property records is necessary to preserve stability and certainty regarding title to real property, and constructive notice of probate records in *in rem* proceedings is necessary because such proceedings are intended to bind all persons. This case is neither a case regarding title to real property, nor is it an *in rem* proceeding...

*Id.*, at 337. *Salinas* thus is analogous to the issue in *NRC, supra,* involving the lots being located below the 715-foot line. There, as in *Salinas*, the problem was not one that could be seen and understood simply by reference to the title documents—indeed, in both cases a survey was necessary to bring the issue into focus. Here, by contrast, SCOTT's claim is very much an issue of title, and is

25

governed entirely by what her own chain of title says she has or does not have, by whether Lot 1 does or does not feature waterfront access, and by whether that waterfront access is or is not shared by the rest of the subdivision.

Of course, even if *Ojeda de Toca* and *Salinas* could be applied to SCOTT's DTPA claims under the instant undisputed facts—which clearly is not the case—still it would avail her nothing. The statute of limitations on a DTPA claim is two years. Tex. Bus. & Comm. Code §17.565. "The DTPA incorporates the discovery rule into the statute, providing that the claim accrues when the 'consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.'" *Southwest Olshan Foundation Repair Company, LLC v. Gonzales*, 345 S.W.3d 431, 437 (Tex. App.-San Antonio 2011), *aff'd*, 400 S.W.3d 52 (Tex. 2013). It is of course axiomatic that discovery occurs when a plaintiff has knowledge of such facts, conditions or circumstances as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action. *Isaacs v. Schleier*, 356 S.W.3d 548, 562 (Tex. App.-Texarkana 2011, pet. denied); *see also Estate of Jobe v. Berry*, 428 S.W.3d 888, 902 (Tex. App.-Texarkana 2014, no pet.). "Knowledge of such facts is, in law, equivalent to knowledge of the cause of action for limitations purposes." *Estate of Jobe, supra* (quoting *Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex. App.-Houston [14th Dist.] 2008, pet. denied)).

On March 23, 2011—*two years and two months before she filed suit*—SCOTT e-mailed attorney Robert Ritter with her concerns about discrepancies between Lot 2 and Lot 3 regarding waterfront access through Lot 1. Again as she testified, she questioned her ownership rights to the water access lot and confirmed that this is when she began trying to discover "what do I have or not have" (see *supra*). Even if, under the clear authority of *Ford* and *NRC, supra*, limitations on SCOTT's DTPA claim could be deemed to have begun at any time later than when she closed on the property—which Appellees do not concede, but expressly deny—still nothing could be clearer than that SCOTT, *more than two years before she filed suit*, was on notice of facts and of the need for further inquiry which, as a matter of law, constitutes notice of the cause of action.

In sum, *all* claims and causes of action of SCOTT are, conclusively and as a matter of law, barred by the two-year and four-year limitations statutes. Tex. Civ. Prac. & Rem. Code §§16.003, 16.004. The trial court was correct in its entry of the interlocutory summary judgment in favor of FURROW and KELLER WILLIAMS, and that order, as incorporated into the final judgment, should be affirmed.

B.    *SCOTT'S claims and causes of action are barred by the sham affidavit doctrine.*

27

In addition to limitations, the interlocutory summary judgment in favor of FURROW and KELLER WILLIAMS on liability can be affirmed on at least one other ground as well.

Again, the trial judge recited in his letter ruling that "[t]he Defendants' Traditional Motion for Summary Judgment is GRANTED in all things." Supp. C.R. (04/29/15), at 4. This was incorporated into the summary judgment order itself dated November 13, 2014: "Defendants' Traditional Motion for Summary Judgment is Granted in all things." Supp. C.R. (04/29/15), at 2. Among the grounds of the "traditional" summary judgment motion was, again, that of the sham affidavit doctrine: that the summary judgment evidence as set forth in SCOTT's deposition testimony conclusively established as a matter of law that she received the title which she understood she was to have received, and that her subsequent affidavit—claiming that what she *really* wanted and expected, and that what FURROW had represented to her she would receive, was "exclusive" waterfront access rather than merely waterfront access—was and is powerless to create a fact issue.

In *Farroux, supra*, the plaintiff alleged that he ate a grand slam breakfast from Denny's which gave him food poisoning. He admitted in deposition that his personal physician had told him there were too many possibilities to determine whether the Denny's food caused his illness, and that no physician had ever told him that the

28

Denny's breakfast caused any of his health problems. Subsequently, however, in response to the defendant's summary judgment motion, the plaintiff submitted an affidavit stating that his physician told him his food poisoning was the result of the Denny's meal. The trial court granted summary judgment for Denny's, and the plaintiff appealed. *Farroux*, at 109-110.

> The appellate court affirmed, observing as follows:

> A party cannot file an affidavit to contradict his own deposition testimony without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment. If a party's own affidavit contradicts his earlier testimony, the affidavit must explain the reason for the change. Without an explanation of the change in the testimony, we assume the sole purpose of the affidavit was to avoid summary judgment. As such, it presents merely a "sham" fact issue.

*Id.*, at 111 (fn. omitted).

This Honorable Court addressed the sham affidavit doctrine in the case of *Cantu v. Preacher*, 53 S.W.3d 5 (Tex. App.-San Antonio 2001, pet. denied), synthesizing the earlier holdings of Texas appellate courts concerning this doctrine and stating the conclusion succinctly and well:

> We conclude that a court must examine the nature and extent of the differences in the facts asserted in the deposition and the affidavit. If the differences fall into the category of variations on a theme, consistent in the major allegations but with some variances of detail, this is grounds for impeachment, and not a vitiation of the later filed document. If, on the other hand, the subsequent affidavit clearly contradicts the witness's

earlier testimony involving the suit's material points, without explanation, the affidavit must be disregarded and will not defeat the motion for summary judgment.

*Cantu*, at 10.

That SCOTT's affidavit falls into the latter category seems too obvious to require elaborate discussion, but a brief review and comparison should suffice.

Again, when asked whether she thought she was buying the Lot 1 waterfront access lot in its entirety along with Lot 2, or that other people with lots in the vicinity would have access through Lot 1, SCOTT replied: "I was—no, he [FURROW] explained that they're—by purchasing 1104 Peggy Lane [Lot 2], I would be purchasing a legal interest in that waterfront access lot [Lot 1]." Q: "Right. Shared with others?" "A: I don't know." *Supra*, at 3-4. She testified under oath that she "didn't at the time [or purchase of Lot 2] know who all had access to the [waterfront access] lot", but that *she didn't believe she ever thought she had exclusive access to the lot—rather, she believed she was purchasing a legal right or interest in and to the waterfront access lot. Supra*, at 4. She testified, and then repeated, that her *only* complaint against FURROW was as follows:

> Q: Because isn't that your complaint against—I mean, that's the only complaint you have against Mr. Furrow as we sit here today, right? "He sold me this property and he said I had waterfront access rights and I don't." Isn't that your complaint against Mr. Furrow?

30

A: *Yes.*

Q: I mean, that's your only complaint against Mr. Furrow, right?

A: *Yes.*

*Supra*, at 8 (emphasis added).

Compare that candid testimony with SCOTT's cynical and disingenuous attempt to "reboot" her claims and causes of action after being presented with the recorded documentary evidence that her property did indeed enjoy waterfront access (as shown in her "supportive affidavit"):

1.    In 2006, I purchased Lot 2 and what I believed was a one-half interest in Lot 1 (the waterfront/water access lot associated with the property I was purchasing). At the suggestion of Movant [FURROW] one year later (in 2007), I purchased Lot 3 (the adjoining vacant lot to Lot 2) directly from [grantees Denn and Barr] so as to acquire exclusive ownership of the waterfront/water access property [Lot 1].

...

11.    Movants [FURROW and KELLER WILLIAMS] were responsible for selling property to me, which was packaged up and sold to me with the illusion of exclusivity. The illusion of exclusivity, along with Movants' failure to disclose, would be enough for the most experienced buyer to be mislead...

II Supp. C.R., Vol. 2, at 491, 496. *There is not the slightest attempt anywhere in this affidavit to explain, or even to discuss, SCOTT's miraculous "recovered memory" of FURROW having promised "exclusive ownership" of Lot 1 through the purchase*

31

*of Lots 2 and 3—or of his having "packaged" either of these lots in an "illusion of exclusivity"—when she had testified earlier, under oath, that she believed only that she was acquiring waterfront access, not that she was acquiring "exclusive" waterfront access.*

While SCOTT made no attempt to explain the discrepancy in her affidavit itself, her attempt to do so in her Appellant's Brief borders on the nonsensical. Quoting the first paragraph of her affidavit in opposition to the summary judgment motion, SCOTT states: "The evidence thus suggests Ms. Scott understood that until she purchased the adjoining vacant lot [Lot 3] *she would share ownership of the waterfront lot and others (who she did not know) would have access to it.*" Appellant's Brief, at 18 (emphasis added). SCOTT had just quoted herself as stating, in that paragraph, that "I purchased Lot 3 (the adjoining vacant lot to Lot 2) directly from Defendants, Juanita Denn and D.R. Barr ("Sellers"), so as to acquire *exclusive ownership* of the waterfront/water access property" (emphasis added). If she believed she had already purchased—*from Denn and Barr*, the sellers of Lot 2—a one-half interest in the "exclusive ownership of the waterfront/water access property", and that by purchasing Lot 3 *from Denn and Barr* she would acquire the other one-half interest to go with the one-half interest they had already sold her, then how could she conceivably have believed she was sharing ownership of the waterfront access lot

32

[Lot 1] *with others whom she did not know?* SCOTT's statement makes no more sense than any of her other arguments.

Exhibit 2 of the interlocutory summary judgment motion of FURROW and KELLER WILLIAMS–the A.J. Grebey Subdivision No. 1 plat—clearly establishes SCOTT's waterfront access rights appurtenant to Lot 2 (as well as to Lot 3, in which purchase FURROW and KELLER WILLIAMS played no part). II Supp. C.R., Vol. 1, at 197-198. SCOTT came to this realization when questioned on this very point at her deposition. Her subsequent attempt to recast this action in terms of "exclusivity" is meritless at best and fraudulent at worst. It should not be countenanced by this Honorable Court. Once again, the trial court's entry of summary judgment in favor of FURROW and KELLER WILLIAMS, as to all claims and causes of action, was and is correct.

> ISSUE NO. 2 RESTATED: SCOTT HAS FAILED TO PRESERVE ERROR AS TO THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT IN FAVOR OF APPELLEES ON THEIR COUNTERCLAIM FOR ATTORNEY'S FEES (Responsive to Appellant's Issue Nos. 3 and 4)

SCOTT further complains of the trial court's granting of summary judgment on the counterclaim for attorney's fees of FURROW and KELLER WILLIAMS. They note, correctly, that the summary judgment motion on the counterclaim featured

33

two grounds for recovery: first, by way of contractual attorney's fees under the earnest money contract by which SCOTT purchased Lot 2; and second, pursuant to Tex. Bus. & Comm. Code §17.50(c) as a sanction for a groundless/bad faith claim brought under the DTPA. SCOTT relies chiefly on two cases—*Lesieur v. Fryar*, 325 S.W.3d 242 (Tex. App.-San Antonio 2010, pet. denied) and *Marker v. Garcia*, 185 S.W.3d 21 (Tex. App.-San Antonio 2005, no pet.)—as authority for her argument that neither ground properly supports an award of fees.

Whether this argument would have merit had SCOTT properly preserved her complaint for appellate review is a purely hypothetical question which need not detain this Honorable Court. Rule 33.1(a), Tex. R. App. P., is clear on this point:

> As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion that: (A) *stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint*, unless the specific grounds were apparent from the context; and (B) complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure...

(emphasis added). As discussed *supra*, SCOTT's submissions to the trial court will be searched in vain for any suggestion to the effect that the earnest money contract provides no basis for an award of attorney's fees to persons or entities said not to be parties to, or third party beneficiaries of, the contract, or that the order granting

34

summary judgment on the counterclaim is deficient for having failed to include statutory findings. These arguments may not properly be considered for the first time on appeal. *See, e.g., **Watts v. Oliver**,* 396 S.W.3d 124, 135 (Tex. App.-Houston [14th Dist.] 2013, no pet.) (observing that except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties, and that fundamental error exists in those instances "in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of Texas, or instances in which the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter").

Even so, and in the alternative, were this Honorable Court to take cognizance of Appellant's complaint, Rule 44.4(a), Tex. R. App. P. provides that "[a] court of appeals must not affirm or reverse a judgment...if: (1) the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals; and (2) the trial court can correct its action or failure to act." Thus this Honorable Court could remand so much of the judgment as concerns the award of attorney's fees for corrective action by the trial court, including with regard to any necessary findings dealing with the recover of attorney's fees under DTPA §17.50(c).

35

## CONCLUSION

In sum, SCOTT has presented no lawful complaint as to the attorney's fees component of the judgment, and no persuasive complaint as to *any* component thereof. There is no legitimate reason to disturb the judgment of the trial court in this matter, and FURROW and KELLER WILLIAMS respectfully submit that it should be affirmed in its entirety.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellees respectfully pray that this Honorable Court affirm the judgment of the trial court herein in its entirety; and for such other and further relief, at law or in equity, to which they might show themselves justly entitled.

Respectfully submitted,

THORNTON, BIECHLIN, REYNOLDS & GUERRA, L.C.
100 N.E. Loop 410, Suite 500
San Antonio, TX 78216
210/342-5555; 210/525-0666 (fax)
vwaters@thorntonfirm.com


By: s/ Vaughan E. Waters
　　　Vaughan E. Waters
　　　State Bar No. 20916700
　　　vwaters@thorntonfirm.com

ATTORNEYS FOR APPELLEES

36

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9, Tex. R. App. P., the undersigned certifies that:

1.    The Brief of Appellees contains 8,787 words.

2.    The Brief of Appellees has been prepared in proportionally spaced typeface using Word Perfect in Times New Roman 14 point.

s/ Vaughan E. Waters
Vaughan E. Waters

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing instrument has been forwarded to the undersigned party on the 1st day of December, 2015.

*Via e-service*

Mr. Frederick Junkin
Andrews Kurth LLP
600 Travis St., Suite 4200
Houston, TX 77002

*Attorneys for Appellant*

s/Vaughan E. Waters
Vaughan E. Waters

# APPENDIX I

38741 VEW/jld 5/6/15

CAUSE NO. 13-1125-CV-A

| | |
|---|---|
| STACEY SCOTT | IN THE DISTRICT COURT |
| VS. | GUADALUPE COUNTY, TEXAS |
| JUANITA DENN, D.R. BARR, LARRY FURROW, KELLER WILLIAMS LEGACY GROUP, PATRICK DENN, ROBERT RITTER, CAROL MATTHEWS, AND DOES 1 THROUGH 5, INCLUSIVE | 25TH JUDICIAL DISTRICT |



## ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL ON ATTORNEY'S FEES

On the 7th day of May, 2015 came on for consideration Plaintiff's Motion for New Trial on Attorney's Fees. The parties appeared in person and through their respective attorneys of record. The Court, upon consideration of said motion, the response thereto and the arguments of counsel is of the opinion that said motion should be, and is hereby, in all respects DENIED.

SIGNED and ENTERED this ___7th___ day of May, 2015.

_____
JUDGE PRESIDING

Approved As to Form

_____
MATTHEW WARDALL    SBN 00791861
Appearing for Atty Tracia Lee
Attorneys for Plaintiff for this matter only

_____
Vaughan E. Waters    SBN 20916700
Atty for Defendants